MAJOR v. HUNT.

1. WILL.—A female over twelve years of age may during her minority make a will disposing of her personal property.

2. CONVERSION.—Where lands of an infant are sold under order of Court, and the funds arising from the sale are directed when due to be paid into Court to await its further order, the property is not thereby converted into personalty. Rule of ascertaining if such funds are converted is one of intention to be gathered from the entire proceeding.

MR. CHIEF JUSTICE McIVER *dissents.*

Before TOWNSEND, J., Pickens, November, 1901. Modified.

Action by Mary V. Major against E. Marion Hunt *et al.* From Circuit decree the defendant, Francis M. Farr, appeals.

*Messrs. Haynsworth & Robinson,* for appellant, cite: *Legal character of minor's property not changed by sale by Court:* 3 Pom. Eq. Jur., sec. 1167; 2 Am. & E. Dec. in Eq., 117; 19 Vesey, 122; 47 N. Y., 21. *Infant cannot elect to change property:* 1 Whar., 252; 2 A. & E. D. in Eq., 118; 7 Ency., 474.

*Messrs. Carey & McCullough,* for executors of minor, contra, cite: *Can an infant make a will of personalty?* 16 Ency., 2 ed., 265; Rev. Stat., 1987; 3 Strob., 167; 2 Black. Com., 497; 4 Kent. Com., 506. *Was there a conversion of the minor's realty into personalty?* 7 Ency., 2 ed., 473, 475; 3 S. C., 308; 51 S. C., 271; 3 Pom. Eq. Jur., secs. 1159, 1160, 1167; Tyler on Infancy, 298; 3 Wheat., 563; 18 Am. Dec., 336.

April 21, 1902.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   The appeal herein presents two

7—64

questions: 1st. Has an infant power to make a will of personal property; and 2d. Was there a conversion of Amber Hunt's realty into personalty? H. C. Hunt died in 1861, leaving a will by which he gave to his wife, S. A. D. Hunt, a tract of land containing 248 acres, during her life, which on her death was to be equally divided among his then living heirs. In 1891 and on the death of the life tenant in 1894, the persons answering the description of the testators, the then living heirs, were his children, E. M. Hunt, Nancy E. Ponder, Mary V. Major and M. E. D. Brockman, and his grand-child, Amber Hunt. On the 21st October, 1891, E. M. Hunt commenced an action against the infant, Amber Hunt, the complaint containing the following allegations and prayer:

"7. That the said S. A. D. Hunt has sold her life estate in said land to this plaintiff, and all the heirs at law, including N. Florence Hunt, the widow of James Hunt, deceased, have joined in the deed, conveying all their right, title and interest present or to accrue, and the consideration as expressed in said deed is $2,500. That said minor, Amber Hunt, the defendant herein, did not join the others in said deed because of her minority.

"8. That the purchase (money) for said lands is not to be paid until after the death of the life tenant, she being provided for in the contract of sale between herself and this plaintiff.

"9. That the relatives and friends of the minor defendant believe that it is to the interest of said minor defendant to sell the lands to the plaintiff herein on the condition set out as above and for the price paid, taking his secured obligation that the money shall be paid at maturity, rather than let the property remain as it is, subject to wear and tear and loss of buildings and other improvements, thereby decreasing the same in value to a price less than that now agreed on.

"Wherefore, plaintiff prays that this Court order Maj. J. M. Stewart, clerk of said Court, to make and deliver to this plaintiff a deed to the said minor's interest in said lands, giv-

ing him a good title thereto, and take his secured obligation for the payment of said minor's share of the $2,500, the purchase price upon the death of the life tenant."

The agreement between E. M. Hunt and the parties aforesaid (except Amber Hunt, who was then an infant only seven years of age,) for the transfer of their interests in said tract of land, was on the following terms: He was to support the widow during her lifetime, and on her death was to pay $2,000, to be equally divided between the other four remaindermen; this $2,000 was to be secured by his note and mortgage of the premises, payable on the death of the life tenant. The referee to whom the case was referred reported that $2,500 was a fair price, and that the transaction was for the best interest of all concerned, concluding his report with the recommendation that the relief prayed for in the complaint be granted. Thereupon the Court decreed as follows: "Having heard the pleadings herein and an order passed referring the case to J. E. Boggs, special referee, to take testimony and report his conclusions of fact and any other special matter; and now, upon hearing the report of the special referee and upon motion of B. A. Morgan, it is ordered: That the said E. M. Hunt be required to execute to N. E. Ponder, M. V. Major, M. A. D. Brockman, N. Florence Hunt and Amber Hunt a note for the sum of $2,000, and a mortgage to secure the same, covering the tract of land containing 248 acres of land; that upon the due execution of said note and mortgage and exhibition of the same to Maj. J. M. Stewart, clerk of this Court, that he, J. M. Stewart, clerk of this Court, be authorized and is required to make to the said E. M. Hunt, his heirs and assigns, a good and sufficient deed conveying to the said E. M. Hunt all of that undivided interest of, in or to certain tracts of land now vested in the minor defendant, Amber Hunt (then follows a description of the land). That the money due the said Amber Hunt, according to the note and mortgage above referred to and the terms therein, be paid into the hands of this Court, and to await the order of the Court as to the final disposition. J. H. Hudson,

presiding Judge.    March 8, 1892."    On the 5th March, 1901, Amber Hunt died, unmarried, being then seventeen years of age, but leaving what purported to be her last will, whereby she gave to her cousin, Leola T. Ponder, her interest in the note and mortgage executed by E. M. Hunt. Francis M. Farr, the appellant, is the grand-mother of Amber Hunt and her nearest living relative.    The present action was to foreclose the mortgage executed by E. M. Hunt, and a decree has been rendered for a sale of the property, and directing that the interest of Amber Hunt be reserved pending the determination of this issue.    W. M. and F. B. Ponder, claiming as executors of Amber Hunt, insist that her interest in said note and mortgage must be regarded as personalty, and that it passed to them under the will.    Whereas, Francis M. Farr, the sole heir, claims: (1) That Amber Hunt was under eighteen years of age and could not make a valid testament; (2) and that in equity the interest of Amber Hunt in the note and mortgage must be regarded as real estate, and on her death that it descends to the appellant. Judge Townsend, who heard this controversy, held that the will was valid, and that Amber's interest in the note and mortgage was personal property and passed under the will.

We will first consider whether the infant, Amber Hunt, had the power to make a will of personalty.    Though raised by the exceptions, this question was not argued by the appellant's attorneys.    It has not, however, been formally abandoned.    At common law, males of fourteen and females of twelve years of age had power to dispose of their property by will.    16 A. & E. Enc. of Law, 265; *Posey* v. *Posey,* 3 Strob., 167.    Sec. 1987 of the Revised Statutes is as follows: "Any person having right or title to any lands, tenements or hereditaments whatsoever (persons of unsound mind and infants excepted) may dispose thereof by will in writing, at his or her own free will and pleasure, except as herein provided; but all wills or testaments made of any lands, tenements or other hereditaments by any person within the age of twenty-one years, idiot or by

any person *de non sane* memory, shall not be taken to be good and effectual in law." This, however, has no application to a will of personal property, and as Amber Hunt was more than twelve years of age, she had testamentary capacity to dispose of her personalty.

We will next consider whether there was a conversion of her realty into personalty. In *North* v. *Valk,* Dudley's Eq., 212, the doctrine as to conversion is thus stated: "The general rule is well known that land directed by the testator to be sold shall be regarded in equity as personal estate; but this is to be taken subject to various qualifications. If the land is directed to be sold, as the cases express it, out and out, as if there were a general arbitrary direction to sell, without any specification of the object of the sale or of the purpose to which the money was to be applied, this would be evidence of the intention to convert the land into money in all events; but if it be directed to be sold for certain specific purposes and the purposes altogether fail, as if it be for the payment of debts, and the testator afterwards pays off his debts in his lifetime, then the lands will go to the heir, as real estate. Or if, after accomplishing the specified purposes, a surplus of the fund should remain undisposed of, a trust in this subject, it is said, results for the heir." The following other authorities elucidate the question under consideration: 2 A. & E. Dec. in Equity, in which there are voluminous notes to the cases therein reported, commencing on pages 86 and 109. 3 Pom. Eq. Jur., sec. 1167; *Ex parte Mobley,* 2 Rich. Eq., 56; *Norton* v. *Bradham,* 21 S. C., 375; *Clarke* v. *Clarke,* 46 S. C., 230; *Holmes* v. *Pickett,* 51 S. C., 271; *Horton* v. *McCoy,* 47 N. Y., 21. When land of an infant is sold under judicial proceedings, the fund arising from the sale is not divested of its character as realty, unless it appears from the order directing the sale that it was the intention of the Court to convert the proceeds into personalty. The mere sale of the land is not, in itself, sufficient to show this intention. It is not only of the utmost importance to resort to the pleadings to determine the purpose which the

parties themselves had in view, but likewise to the order of
the Court, especially where the rights of an infant are in-
volved, to ascertain to what extent the Court has allowed
such purpose to be carried into effect.    It is contended by the
respondent that the purpose for which the sale was made was
to convert the land out and out into personal property, and
that this is shown by the fact that the purchaser was required
to execute a mortgage of the premises, which it is argued was
in effect an investment by the Court of the infant's share of
the proceeds in personalty.    The requirement that the pur-
chaser should execute a mortgage of the premises, was solely
for the purpose of enabling the Court to enforce compliance
with his bid.    The mortgage represented the proceeds of the
sale, and must be simply regarded as embodying the pur-
chase money.    The money was not payable until the death of
the life tenant in 1894, and there was no necessity for the
Court to take immediate action looking to an investment of
the infant's estate before the money came into possession.
The order of sale did not provide that when the money was
paid into Court it should be invested in personal property nor
in any other manner.    If the order of sale had contained a
provision that the proceeds of sale when paid into Court
should be delivered to the infant or her guardian, it might be
contended with effect that this would manifest an intention
to convert the realty in all events into personalty, and that
equity, which considers that as done which should be done,
would stamp the proceeds with the impress of personalty.
But such was not the order, which provides that the purchase
money due the infant should be paid into the hands of the
Court, to await its further order as to the final disposition
thereof; thus leaving the Court free to invest the money of
the infant thereafter either in realty or personalty.    It may
have been for this purpose that the final disposition of the
proceeds was left open.    The court of chancery, having the
custody and control of an infant's estate, is like a trustee,
clothed with discretionary powers of investment, and until
the discretion is exercised and the investment actually made,

the property in his hands retains its original character. The reasons why the proceeds arising from the sale of an infant's land retains the character of real estate, is because the infant is incapable of making an election; and the court of chancery, in disposing of the fund, exercises its discretion, and makes the election for the infant. As we have already shown, the sale of the property was not alone sufficient to convert it into personalty, and as the Court has not exercised its discretion in so converting it, the proceeds retain the original character of the property from which they are derived.

Our construction of the order is that it contains but three provisions: 1. That simply providing for the sale of the land. 2. That relating to the security and payment of the purchase money; and 3. That requiring the share of the infant when paid into Court to remain under its control until disposed of by a final order. The Court did not exhaust its discretionary power over the infant's estate, and it could not be known until it took final action in disposing of it, whether the proceeds would be converted into personalty. As we fail to discover wherein the order manifests an intention to divest the proceeds of the original character of the property from which they arise, they must still be regarded as realty, and his Honor, the Circuit Judge, erred in ruling otherwise.

It is the judgment of this Court, that the judgment of the Circuit Court be so modified as to conform to the conclusions herein announced.

MR. CHIEF JUSTICE McIVER *dissents.* As he thinks there was actual conversion into personal property, and it is not a case for the application of the doctrine of equitable conversion.