Hon. R. C. WATTS, Associate Justice and Chief Justice.

Hon. THOS. P. COTHRAN, Associate Justice

Hon. J. HARDIN MARION, Associate Justice

Hon. EUGENE S. BLEASE, Associate Justice

Hon. JOHN G. STABLER, Associate Justice

Hon. JESSE F. CARTER, Associate Justice

12168

### ADAIR v. FIRST NATIONAL BANK OF CLINTON

(137 S. E., 192)

1. ATTORNEY AND CLIENT—CONTRACTS FOR CONTINGENT FEES DEPENDENT ON RESULT OF LITIGATION ARE VALID.—Contracts between attorney and client by which the latter agrees to pay fees contingent on the result of litigation pending or to be instituted are valid and binding and will be enforced according to their terms.

2. JUDGMENT—REFUSAL TO SET OFF JUDGMENT FOR PLAINTIFF ASSIGNED TO HIS ATTORNEYS AGAINST JUDGMENT FOR DEFENDANT HELD NOT ERROR.—Where plaintiff in action for damages agreed to pay his attorneys $100 and one-half of amount recovered, and to secure payment agreed to assign judgment, and where defendant before rendition of judgment for plaintiff entered a judgment in its own favor against plaintiff instead of asserting counterclaim, *held* Court, after assignment to plaintiff's attorneys, properly refused to set off judgment for plaintiff against judgment for defendant.

Before C. M. DRUMMOND, SPECIAL JUDGE, Laurens, November, 1924.   Affirmed.

Action by Joe R. Adair against the First National Bank of Clinton. From an order refusing to set off a judgment for plaintiff against a judgment previously entered for defendant, defendant appeals. Order affirmed.

The following is the order of Judge Drummond appealed from:

"This matter came on for hearing on petition and motion of the defendant, First National Bank of Clinton, S. C., to set off against the judgment of the petitioner against the plaintiff, the judgment obtained by the plaintiff against the petitioner in the above stated action.

"The plaintiff made return that he had prior to the commencement of the action assigned to his attorneys, Messrs. Simpson, Cooper & Babb, any judgment he might obtain in said action against the petitioner to secure the fee agreed by him to be paid such attorneys in instituting and prosecuting said action, to the amount of $100 and one-half of the judgment obtained.

"The petitioner obtained a judgment against the plaintiff. Subsequently the plaintiff as a result of the efforts of his attorneys obtained judgment against the petitioner. The plaintiff was insolvent or practically so at the time of the commencement of the action and had no way to secure the services of attorneys except by securing them by assignment of the judgment. In good faith, this was done. Bad faith is not charged. It would be inequitable to set off a portion of the judgment so assigned to the attorneys against the judgment of the petitioner against the plaintiff. The judgment of the plaintiff created a fund by the efforts of the attorneys, and they are entitled to a lien on the fund for their reasonable fees in the absence of contract, but in this case there is a contract made and performed in good faith, and this Court in equity and good conscience will enforce same. *Ex parte Hires*, 67 S. C., 117; 45 S. E., 146; 100 Am. St. Rep., 713. *Ex parte Wells*, 43 S. C., 477; 21 S. E., 334. *Simmons v. Reid*, 31 S. C., 389; 9 S. E., 1058; 17 Am. St. Rep., 36.

"It is, therefore, ordered that the judgment obtained by the plaintiff, Joe R. Adair, against the defendant, First National Bank of Clinton, S. C., to the extent of one-half thereof, less $100, be set off against the judgment obtained by said bank against the said Adair in said action; that the remaining half of said judgment of the said Joe R. Adair against the said bank and the further sum of $100 thereof be paid to Simpson, Cooper & Babb, attorneys for the said Joe R. Adair, for services rendered in said action, with interest from date of the judgment.

"It further appears that the said Joe R. Adair is the head of a family residing in this State, and as such is entitled to a homestead in real estate and personal property, and he asks that same be assigned to him in this action in the funds arising from the sale of his real estate in so far as his homestead in realty is concerned. The bank claims that the said Adair has, or has had, other real estate from which homestead can be assigned. It is, therefore, ordered that the question as to the property from which such homestead shall be assigned be, and the same is, referred to commissioners, one to be by the plaintiff, one by the said bank, and one by the Sheriff of the county, said commissioners to be disinterested freeholders of the county; that the surplus funds arising from the sale of the real estate of the plaintiff after payment of the mortgage indebtedness be regarded as real estate."

*Messrs. Dial & Todd* and *O. L. Long,* for appellant, cite: *Offset:* 1 Code 1922, Sec. 544. *Right of homestead:* 51 S. C., 101.

*Messrs. Simpson, Cooper & Babb* and *Blackwell, Sullivan & Wilson,* for respondent, cite: *Offset of judgments:* 31 S. C., 389. *Notice of judgment an incident only:* 43 S. C., 477; 67 S. C., 108. *Surplus proceeds from sale of plaintiff's land held in possession of the Court will be treated as realty for homestead purposes:* 3 Code 1922, Sec. 5498; 64 S. C., 97; 86 S. C., 343; 2 Rich. Eq., 56; 60 So., 804.

March 7, 1927.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE.

This is an action for damages, and was commenced in 1922; a verdict was rendered for the plaintiff in the sum of $1,793, and judgment was duly entered on the said verdict. Some time before the rendition of the verdict, on motion of appellant, a judgment was entered in favor of appellant against the respondent in the sum of $14,272.07.

Prior to the commencement of the action, the plaintiff agreed to pay his attorneys $100 and one-half of the amount recovered for their services to be rendered in the suit, and to secure the payment of the same agreed to assign to said attorneys any judgment that might be obtained. Not being able to pay the fees, he did assign the judgment to his attorneys in accordance with the said agreement.

Appellant filed its petition in the cause, asking that the judgment against it be set off against its judgment against the plaintiff. To this plaintiff made return that he had assigned one-half of the judgment, plus $100, to his attorneys, in pursuance of his agreement with them. He also claimed a homestead against defendant's judgment.

Judge Drummond decided the return to be sufficient, and refused to set off the proceeds of the judgment of plaintiff assigned to plaintiff's attorneys, and sustained the assignment. He also ordered the homestead to be assigned and set off by commissioners—the proceeds of the sale of lands to be regarded as realty.

Defendant appeals from this order, which will be set out. There is no difference among the members of the Court as to the matter of homestead; the only difference being as to the matter of setting off the part of the judgment assigned to plaintiff's attorneys. The majority of the Court favor the affirmance of the decree of Judge Drummond, for the following reasons:

"A contingent fee is one which is made to depend upon the success or failure in the effort to enforce a supposed right, whether doubtful or not. Contracts between attorney and client by which the latter agrees to pay to the former fees contingent upon the result of litigation pending, or to be instituted, are valid and binding upon the parties, and will be enforced at law according to their terms." 6 *Corpus Juris, 740.*

"The Court of Common Pleas may by motion on rule to show cause require parties to set off their judgments *pro tanto* against each other; but this jurisdiction is equitable in its nature, and the application is addressed to the sound, judicial discretion of the Court. The Circuit Judge properly refused to permit defendant to set off his judgment against a judgment obtained by plaintiff in claim and delivery after plaintiff, in pursuance of a prior parol agreement, had assigned his judgment to his attorney in payment for services rendered in obtaining it, who in turn, for value, assigned it to a stranger, neither of the assignees having notice of defendant's judgment." *Simmons v. Reid,* 31 S. C., 389; 9 S. E., 1058; 17 Am. St. Rep., 36.

Mr. Justice McIver, in the course of his opinion, has this to say:

" * * * Yet it is undoubtedly true that an attorney has an equitable claim to be paid for his services out of the judgment which he has recovered for his client; and the Court, in a proper case, especially in a matter addressed to its discretion, will always recognize such a claim. As is said in the case of *Puett v. Beard,* 86 Ind., 172 (S. C.) ; 44 Am. Rep., 280: 'The right to set off one judgment against another is purely equitable and only allowed where good conscience requires it, and good conscience is far from requiring that an attorney's claim for services in securing the judgment should yield to the claim of those holding rights adverse to their clients.' " 31 S. C., 392; 9 S. E., 1059; 17 Am. St. Rep., 36.

"An agreement between an attorney and client that the attorney shall have a lien on the judgment, is decisive as to the existence of the lien and its amount, and constitutes a valid equitable assignment of the judgment *pro tanto* which attaches to the judgment as soon as it is entered." 6 *Corpus Juris,* 768; *Id.,* 742.

There seems to be no serious question about the general principles as above set forth, but their application to this case is brought into question.

It is well to bear in mind that Judge Drummond was faced with a situation that existed *at the time he heard the case,* and not as to how the pleadings stood when they were filed by the respective parties. If appellant desired to use its claim against respondent as a *counterclaim,* it ought to have desisted from entering up judgment as it did by the order of Judge Featherstone, and waited and had the whole matter submitted to the jury on the trial before Judge Johnson. *That* was the time to have settled the whole matter in a single judgment—that is a judgment for the plaintiff upon his claim, reduced by what may be awarded the defendant upon his counterclaim, or a judgment for the defendant upon his counterclaim, reduced by what may be awarded the plaintiff upon his claim (to quote the strong and expressive language of Mr. Justice Cothran). It was in the power of the appellant to have had Judge Johnson bring the whole case to a "focus" and have a single verdict in the case. But appellant did not choose to do this; it had Judge Featherstone give an order for judgment and *entered the judgment up.* Appellant in the *petition* refers to its *judgment* and to the *judgment* of the respondent as *"judgments,"* and not as *"claim"* and *"counterclaim."*

Hence, it is clear that appellant by its own conduct in taking the judgment, in going to trial without having its debt against respondent submitted to the jury as *"a counterclaim,"* and in calling both the $1,793 and the $14,272.07 recoveries *judgments* placed itself in a position where the

principles laid down in the case of *Simmons v. Reid, supra,*
apply with full force; and in our judgment these principles
do apply, for as a matter of law, both the above amounts
are *judgments,* and there can be no getting away from this
position.   To use an expression current among our grand-
fathers, appellant has made its bed and will have to lie in it.

As a matter of common justice and as a matter of public
policy, Courts must protect attorneys when their conduct
has been as fair and as profitable to their clients, as was the
case in the matter now in question.   But for the efforts of
the attorneys for respondent in this case, there would have
been *nothing* to offset on the judgment of appellant.   Appel-
lant conceded nothing until forced to do so by the verdict of
12 men by the assistance of respondent's attorneys.   And
the only interest respondent had in the judgment was what
was left after his attorneys had been paid; that is what is
just and right in this case, and that is what we hold.

We see no error in Judge Drummond's order.

It is the judgment of this Court that the order and judg-
ment of the Court below be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES
BLEASE and STABLER concur.

· MR. JUSTICE COTHRAN (concurring and dissenting):
This opinion was prepared as the leading opinion in this
case, but as a majority of the Court have disagreed with the
conclusion of the writer upon the right of the defendant
bank to set off a judgment in its favor against a judgment
in favor of the plaintiff, to the exclusion of the claim of
the attorneys for the plaintiff under a partial assignment
of what he might recover (there being no objection to the
conclusion as to the plaintiff's right of homestead), I am
filing this as a dissent to the conclusion that the right of set-
off does not exist.

This is an appeal from an order of his Honor, Special
Judge Drummond, in which he refused a motion by the de-
fendant to set off a judgment in its favor, against a judg-

ment in favor of the plaintiff, and in which he allowed the plaintiff's claim of homestead. The order of his Honor, Special Judge Drummond, was the culmination of protracted litigation between the parties, explained in the very clear and comprehensive statement of counsel for the appellant, as follows:

"This action was commenced in the Court of Common Pleas for Laurens County on the 4th day of September, 1922. The action was brought by the plaintiff, Joe R. Adair, to recover damages in the sum of $30,000 for an alleged breach of contract to lend money, carry indebtedness, etc. The complaint also alleged that the plaintiff was indebted to the defendant in a large amount. In due time the defendant answered, denying the allegations of the complaint as to a breach of contract, and set up a counterclaim for the amount due to the defendant by plaintiff evidenced by certain notes and mortgages, described both in the complaint and answer. The issues having been joined, the cause came on for hearing before his Honor, C. C. Featherstone, presiding Judge, and a jury, at the 1923 spring term of the Court. After hearing the testimony the presiding Judge held that the question of damages for an alleged breach of contract was a question of fact which should be submitted to a jury. The question of the amount due to the defendant by the plaintiff on the notes, mortgages and other evidences of indebtedness described in the complaint, were declared to be equitable issues which he heard and determined himself. The trial of the legal issues by the jury resulted in a mistrial. On the equitable issues the Court made a decree bringing in as new parties the Citizens' Building & Loan Association of Clinton, S. C., and others, and found against the plaintiff in favor of the defendant on defendant's counterclaim the sum of $14,272.07. This order and decree was dated June 1, 1923. Thereafter, pending the trial of the legal issues, the defendant entered up judgment against the plaintiff for said amount."

"Thereafter, and in due time, the complaint was amended in obedience to said order. The defendant served an amended answer and the Citizens' Building & Loan Association answered, setting up a mortgage held by it and covering the Jones place and home place of the plaintiff, and asked for a foreclosure of said mortgage and for a sale of the property. The Federal Land Bank held a prior mortgage over the home place, and it was sought to sell same subject to the mortgage of the Land Bank.

"The second trial of the case came on to be heard before Judge J. Henry Johnson and a jury at the November, 1923, term of Court. The legal issues raised by the pleadings were submittted to a jury, which rendered a verdict in favor of the plaintiff against the defendant for the sum of $1,793. Thereafter, judgment was entered thereon and execution issued.

"On the 23rd day of November, 1923, Judge Johnson signed a decree of foreclosure in favor of the Citizens' Building & Loan Association of Clinton, and thereby ordered a sale of the lands described in the mortgages and ordered the proceeds of sale to be applied to the payment of the mortgage indebtedness and the balance to be held by the Clerk of Court subject to further orders of the Court. Pursuant to said decree the land was sold, subject to the Land Bank mortgage over the home place, for the sum of $10,000, which was $4,661.60 more than the mortgage indebtedness and costs, which amount was ordered held by the Clerk of Court subject to further orders. Thereafter, the defendant, First National Bank, filed a petition with the Court asking that the amount found by the jury to be due to the plaintiff be set off against the amount found to be due by the Court in favor of the defendant and that the Clerk of the Court be directed to pay to the defendant bank the balance of the proceeds from the sale of the land to be credited on its judgment.

"The plaintiff made return to this petition, admitting a portion thereof, and alleging that the plaintiff had assigned to his attorneys, Simpson, Cooper & Babb, one-half of any judgment obtained in said action, plus $100 for their services rendered in said suit, and that said attorneys had a lien on the amount found by the jury to be due the plaintiff by the defendant, and that the amount so assigned to said attorneys should not be set off against the amount found by the Court in favor of the defendant against the plaintiff, admitting, however, that the balance should be set off. The return further alleged that the plaintiff was the head of a family and that he was entitled to a homestead in real estate, amounting to $1,000, and asked that the surplus proceeds of sale in the hands of the Clerk be considered and held to be real estate for the purpose of setting off to him his homestead.

"The matter came on to be heard before Special Judge C. M. Drummond. On November 22, 1924, he passed an order, by which he held that the amount alleged to have been assigned to plaintiff's attorneys be not set off against the amount found to be due the defendant by the plaintiff, and ordered the Clerk of the Court to pay to Simpson, Cooper & Babb from the surplus proceeds of sale of plaintiff's lands one-half of the amount found by the jury, plus $100, and allowed a set-off for the balance. Said order further provided for the appointment of commissioners to set off to plaintiff his homestead, and held that the surplus proceeds of sale of the land in the hands of the Clerk of the Court be considered as real property for this purpose. From this order the defendant, First National Bank of Clinton, appeals."

1. As to the right of the defendant bank to have its judgment set off against the judgment of the plaintiff, notwithstanding the assignment by the plaintiff to his attorneys, of an interest in the chose in action which was the basis of the judgment:

It has long been established that the Court has the power to set off mutual judgments. This power formerly belonged exclusively to the Courts of Equity, and, of course, still continues in them; but it has long been recognized as one which may be exercised equally by Courts of law, proceeding on equitable principles. 34 C. J., 701. Accordingly it has been held that the set-off should be allowed only when, in view of all the circumstances, equity and good conscience require it to be made, substantial justice will be promoted thereby, and the rights and interest of third persons will not be infringed. *Id.,* 705. It was upon these principles that the cases of *Williams v. Evans,* 2 McCord, 203. *Bloomstock v. Duncan,* 2 McCord, 318; 13 Am. Dec., 728. *Tolbert v. Harrison,* 1 Bailey, 599. *Low v. Duncan,* 3 Strob., 195. *Meador v. Rhyne,* 11 Rich., 631. *Simmons v. Reid,* 31 S. C., 389; 9 S. E., 1058; 17 Am. St. Rep., 36. *Ex parte Wells,* 43 S. C., 477; 21 S. E., 334. *Ex parte Hiers,* 67 S. C., 108; 45 S. E., 146; 100 Am. St. Rep., 713. *Rookard v. Railroad Co.,* 89 S. C., 371; 71 S. E., 992, were decided. In several of them, notably *Simmons v. Reid,* the assignment of an interest in the recovery to attorneys, for their services in prosecuting the demand, was preferred to the right of the judgment debtor to set off one judgment against the other, and if there be no differentiating circumstances between those cases and the one at bar, they would be controlling. We think, however, that there are such differentiating circumstances which preclude the application of the conclusions reached in these cases, and require a decision adverse to the claim of the attorneys, assignees of a portion of the recovery by the plaintiff.

There is no question as to the good faith and validity of the assignment made by Adair, the plaintiff, to the attorneys. The claim was one in tort, which affected the property or estates of the plaintiff and not one "strictly personal." It was, therefore, assignable, as is clearly shown in the case of *Simmons v. Reid, supra,* which differentiates

that case from the case of *Miller v. Newell,* 20 S. C., 123;
47 Am. Rep., 833, a case of slander. But the effect of the
assignment is a different matter; that is to be determined
by what the plaintiff had to assign.

At the time of the assignment the plaintiff was indebted
to the defendant in a large amount, upon claims which re-
sulted later in a judgment for more than $14,000. Under
the express provisions of Section 355, Code Civ. Proc. 1922,
the claim of the assignee was subject to "any set-off or
other defense" which then existed in favor of the defendant
bank. The plaintiff knew that he owed this money, and it
must be assumed that he communicated the information to
his attorneys; but whether he did or not, the assignees could
acquire no higher right than the plaintiff had, and necessarily
took the assignment subject to the right of the bank to set
off the indebtedness of the plaintiff against any claim that
he might establish against it. Then, too, as the pleadings
stood before the case came in for trial, the plaintiff could
only have been entitled to the excess of his demand, as es-
tablished, over the counterclaim of the defendant. Of this
the attorneys are presumed to have had knowledge, and
their subsequent services must be assumed to have been
rendered in the light of this knowledge.

It must be observed that this is not a case where separate
and independent judgments are sought to be set off, the one
against the other; but it is a case of a demand by the
plaintiff and, in the same action, a counterclaim by the de-
fendant. The ordinary procedure contemplates a single
judgment; that is, a judgment for the plaintiff upon his
claim, reduced by what may be awarded the defendant upon
his counterclaim, or a judgment for the defendant upon his
counterclaim, reduced by what may be awarded the plain-
tiff upon his claim; in other words, the striking of a balance
,and an award accordingly. Such balance represents the
assignable interest of the parties respectively. In the case
at bar the assignable interest of the plaintiff, Adair, was the

excess which he may have recovered over and above the defendant bank's counterclaim. The result shows that the latter was far in excess of his claim, and consequently that he had nothing, or rather it so resulted, to assign. This is plainly indicated by the terms of Section 544, Code Civ. Proc., 1922, as follows:

"When a verdict is found for the plaintiff in an action for the recovery of money, or for the defendant when a set-off for the recovery of money is established, beyond the amount of the plaintiff's claim as established, the jury must also assess the amount of the recovery; they may also, under the direction of the Court, assess the amount of the recovery when the Court gives judgment for the plaintiff on the answer. If a set-off, established at the trial, exceed the plaintiff's demand so established, judgment for the defendant must be given for the excess; or if it appear that the defendant is entitled to any other affirmative relief, judgment must be given accordingly."

If both the claim of the plaintiff and the counterclaim of the defendant had been adjusted upon the one trial, there could be no doubt but that the defendant would have been entitled to a verdict and judgment for $14,272.07, the amount of its counterclaim, less $1,793, the amount allowed the plaintiff upon his claim, an adjusted balance of $12,-479.07. What difference can there be where the amount due the defendant was adjudicated on the equity side of the Court and the amount due the plaintiff on the law side? We do not see why the defendant should lose the right which the statute gives it, of having judgment entered in its favor for the difference between its counterclaim and the plaintiff's claim, by the fact that these amounts were adjudicated at different times; they were both parts of the same action in which really there should have been but one judgment, for the difference. The assignees of a part of the plaintiff's claim could stand in no higher or better position than their assignor, and if the assignor would be bound to judgment

for the amount of the defendant's claim less the amount
of his claim, the assigness must be likewise bound.   In other
words, they by their assignment are entitled only to a por-
tion of what the assignor should have received; and if he
should have received nothing, they are entitled to nothing.

His Honor, Judge Featherstone, upon the trial of the
case, ordered a separation of the legal issue of damages
alleged by the plaintiff, and the equitable issue, the fore-
closure of the defendant bank's mortgage, set up in the de-
fendant's answer, and directed the trial of the legal issue
first.   That trial resulted in a mistrial.   He then proceeded
to hear the equitable issue and filed a decree authorizing
the entry of a judgment in favor of the bank for $14,272.07
and foreclosure.  No appeal was taken from this decree, and
judgment for the amount stated was entered up by the bank
against the plaintiff.   The defendant bank then certainly
had the right to enter up its judgment against the plaintiff
in order to secure a lien upon such other real estate as the
plaintiff may have owned.

In the opinion of Mr. Justice Ramage it is said:

"If appellant desired to use its claim against respondent
as a counterclaim, it ought to have desisted from entering
up judgment as it did by the order of Judge Featherstone
and waited and had the whole matter submitted to the jury
on the trial before Judge Johnson.   That was the time to
have settled the whole matter in 'a single judgment; that is,
a judgment for the plaintiff upon his claim reduced by what
may be awarded the defendant upon his counterclaim, or a
judgment for the defendant upon his counterclaim, reduced
by what may be awarded the plaintiff upon his claim.' * * *
It was in the power of the appellant to have had Judge
Johnson bring the whole case to a 'focus' and have a single
verdict in the case.   But appellant did not choose to do
this; it had Judge Featherstone give an order for judgment
and entered the judgment up.   Hence it is clear that appel-
lant, by its own conduct in taking the judgment, in going to

trial, without having its debt against respondent submitted to the jury as a counterclaim, and in calling both the $1,793 and the $14,272.07 judgments, placed itself in a position where the principles laid down in the case of *Simmons v. Reid, supra,* apply with full force, and, in our judgment, these principles do apply, for, as a matter of law, both the above amounts are judgments, and there can be no getting away from this position. To use an expression current among our grandfathers, appellant has made its bed and will have to lie in it."

In other words, the defendant bank is to be penalized for having exercised a right accorded to it by the decree of Judge Featherstone, from which there was no appeal.

His Honor, Judge Featherstone, completely divorced the two causes of action; he sent the legal issue to the jury and reserved the equitable for himself. In the direction which he gave to the case, I do not see what other course the bank could have taken than it did take. It could not have lugged the equitable cause of action into the trial of the legal issue for two reasons: The submission of the legal issue to the jury necessarily withdrew, and specifically withdrew, the equitable issue from their consideration; the equitable issue had been decided when the legal issue was tried before Judge Johnson. What was the use or the propriety of bringing into the trial of the legal issue an issue which had already been decided? Why run the risk of having the judgment of $14,000, which had been secured, submerged in the trial of the legal issue?

Section 415 of the Code provides that if the plaintiff should fail to reply or demur to the defendant's counterclaim, the defendant may move, on ten days' notice, "for such *judgment* as he is entitled to upon such statement." This may occur long before the case is called for trial, and unquestionably the defendant would be entitled upon proper proof of his counterclaim, as upon a judgment by default, to take and enter up judgment against the plaintiff. Upon

the trial of the case upon the plaintiff's cause of action, is there any obligation upon the defendant to set up his judgment as a counterclaim and run the risk of its submission? I do not think so. Upon the rendition of a verdict in favor of the plaintiff the Judge would have the power and it would be his duty to order the one to be set off against the other and a judgment entered for him in whose favor the balance may be.

"A verdict for defendant on his cross-demand does not of itself extinguish plaintiff's claim, but if both parties establish their claims, judgment will be rendered in favor of the party establishing the greater claim." 34 Cyc., 758.

It is said that it was in the power of the defendant bank to have Judge Johnson bring the whole case to a "focus" and have a single verdict in the case. How could he have done this otherwise than in setting off one judgment against the other after both had been obtained? He was limited by the order of his Honor, Judge Featherstone, to try the legal issue of damages and nothing else; the equitable issue had already been decided. He proceeded in the allotted task, and that trial resulted in a verdict of $1,793 for the plaintiff. If the motion had been made to him then to direct that one judgment be set off against the other and that a judgment be entered in favor of the party entitled to the difference, I do not entertain a doubt that he would have granted the motion, or, what is in effect the same, directed that the larger be credited with the smaller amount. If so, what was there to prevent Judge Drummond from doing the same thing?

I do not think that under the circumstances the defendant bank would have been permitted to enforce by execution the payment of the judgment entered under Judge Featherstone's decree for $14,273.07 as long as the plaintiff's claim, which nominally exceeded the judgment, was at issue in that cause. It might work a serious injury to the plaintiff to allow a defendant, who may have recovered judgment

upon his counterclaim under circumstances as here existed, or as might exist under Section 415 of the Code on default of a reply, to execute his judgment while the plaintiff's cause of action was pending, and conditions might be presented which would call for the interposition of a Court of Equity to insure the orderly procedure of striking a balance. See 34 C. J., 467, and notes, particularly the citation to the case of *Wells v. Cochran,* 88 Neb., 367; 129 N. W., 533; 35 L. R. A. (N. S.), 142, and note, where it is held that even where the judgment debtor has not reduced his claim against the judgment creditor to judgment, circumstances of equitable cognizance may justify an injunction.

In the case at bar the defendant made no effort to enforce its judgment; it apparently was awaiting the outcome of the law issue, and promptly moved to set off the judgments which we think it had a perfect right to do, notwithstanding the assignment to the attorneys, or, what amounts to the same thing, to have the amount of the plaintiff's judgment credited upon the judgment of the bank; this we regard as the proper course to take. From what has been stated we are of opinion that this is not a case for the application of the principle of setting off one judgment against another but a case involving the law of counterclaims. Strictly speaking, the proper course would have been, when the mistrial upon the legal issue was ordered, to have suspended the hearing of the equitable issue, until both issues could be tried by the same Court; at which time, after both had been adjudicated, the Court should direct the entry of a judgment for the difference in whosesoever favor the result may have been.

"When, in an action for the recovery of money only, the defendant in his answer sets out a counterclaim or set-off, there may be a finding in favor of each party, but only one judgment is proper, and that for the difference between the amounts of the findings and for the party in whose favor

is the greater amount." *Gordon v. Steinmetz,* 71 Ohio St., 372; 73 N. E., 512.

The fact that this course was not pursued in the case at bar is not a matter of which the plaintiff can now complain, for he took no exception to the decree of his Honor, Judge Featherstone, rendering judgment in favor of the defendant upon its counterclaim, and the matter stands as if both issues had been adjudicated at the same Court; in which event surely the judgment would have been directed for the defendant in the amount of the difference between the adjudicated claims. The assignment to the attorneys was, of course, subject to this disposition of the matter.

2. We agree with the disposition of the question of homestead made by his Honor, Special Judge Drummond, whose order will be reported. See *Major v. Hunt,* 64 S. C., 97; 41 S. E., 816. *Hottal v. Ekart,* 86 S. C., 343; 68 S. E., 576. *Ex parte Mobley,* 2 Rich. Eq., 56. *Upshaw v. Upshaw,* 180 Ala., 204; 60 So., 804.

In 2 Jones, Mortgage (6th Ed.), § 1693, p. 648, it is said:

"When homestead land is sold under a pre-existing mortgage, the homestead exemption attaches to the money arising from the sale in excess of the amount required to satisfy the mortgage debt."

A contrary ruling would practically nullify the proviso in Article 3, § 28, of the Constitution, that "no judgment creditor or other creditor whose lien does not bind the homestead shall have any right or equity to require that a lien which embraces the homestead and other property shall first exhaust the homestead"—abolishing the two-fund doctrine which had theretofore obtained.

The judgment of this Court, in my opinion, should be that the decree of his Honor, Special Judge Drummond, be modified as herein indicated, and that the case be remanded to the Circuit Court for further proceedings consistent herewith.