495 S.E.2d 450

**In the Matter of the ESTATE OF Frank Preston JONES, Jr., Deceased.**

**In Re Claim of LEATHERWOOD, WALKER, TODD & MANN, P.C., Attorneys, Estate File 56, Drawer 548, Respondent,**

v.

**The ESTATE OF Frank Preston JONES, Jr., Petitioner.**

No. 24748.

Supreme Court of South Carolina.

Heard Dec. 16, 1997.

Decided Jan. 19, 1998.

Rehearing Denied Feb. 4, 1998.

C. Rauch Wise, Greenwood, and Ken Suggs, of Suggs & Kelly, Columbia, both for petitioner.

J.D. Todd, Jr., of Leatherwood, Walker, Todd & Mann, P.C., Greenville, for respondent.

TOAL, Acting Chief Justice:

The Court of Appeals affirmed in result the award of attorneys' fees to Leatherwood, Walker, Todd & Mann, P.C. ("Law Firm"). We granted a writ of certiorari to review the question of whether the express fee contract was contingent on the successful recovery of a tax refund in federal court. We now reverse.

### FACTUAL/PROCEDURAL BACKGROUND

Frank P. Jones, Jr. died in 1979. Elliott, Davis & Company ("Accounting Firm") represented the Jones estate in filing estate tax returns with federal and state authorities. Accounting Firm claimed a marital deduction for the estate because a woman named Eleanor Stickles lived with Jones. This deduction was disallowed by the Internal Revenue Service ("IRS") and the S.C. State Tax Commission. The estate paid the taxes due.

The estate then petitioned a probate court to determine the marital status of Stickles. The court found a valid common law marriage between Jones and Stickles. After this determination, Accounting Firm prepared, on the basis of a marital deduction, a claim for a refund from both the IRS and the S.C. Tax Commission. The claims were denied. The state refund was denied because it was not filed within three years of the due date of the return.

Accounting Firm then contacted Law Firm with which it had a longstanding professional relationship. Correspondence between the two firms indicates that Law Firm was handling two different matters for Accounting Firm: (1) initially representing Accounting Firm against a potential professional liability suit in relation to the Jones estate; and (2) seeking a refund for the estate. Law Firm did pursue these matters, by writing letters to Accounting Firm's carrier reporting the potential professional liability claim, and seeking a refund from the S.C. Tax Commission and the IRS. On October 20, 1987, Law Firm argued the refund matter before the S.C. Tax Commission. On December 22, 1987, the Commission ordered a $30,695 refund.

The record contains copies of bills sent by Law Firm to Accounting Firm detailing fees owed. The final bill is dated August 9, 1988 and reflects over $14,500 in fees. As of August, no part of Law Firm's bill for services regarding the processing of the refund had been paid. On August 23, 1988, Law Firm wrote to the administrator of the estate, proposing a contract to proceed with litigation in federal court. The letter provides, in part:

We are willing to go forward with preparing the case and handling it in United States District Court on a contingent fee basis. We think that a contingent fee of one-third of the total amount recovered (including both principal and interest) would be reasonable. In setting this contingent fee, we will agree for it to include the total amount of our charges for all legal services rendered to this date. We will file the suit and pursue it through the Fourth Circuit (if the District Court opinion is appealed) for one-third of the total amount recovered (taxes plus interest) from the IRS and SCTC. Of course, the Estate would reimburse us for all costs and

expenses incurred in the representation (including those already paid or incurred, i.e. $310.38).

The administrator did not respond, so on September 27, 1988, Law Firm again wrote him: "After having done considerable work in behalf of your brother's estate (the Estate) with no compensation, we cannot and will not do any further work without a contract for specific compensation signed by you as Administrator of the Estate." An attorney for the estate contacted Law Firm a few days later to discuss the federal action. Law Firm wrote a letter to the administrator on October 11, 1988, confirming the initiation of an action in federal court: "As you are well aware and in accord with your direction, [attorney for the estate] telephoned me on yesterday . . . and advised your request that we proceed with filing suit in United States District Court for the District of South Carolina by you as Administrator of the Estate of Frank P. Jones, Jr. against the United States of America."

Law Firm initiated the action in federal court against the IRS. The action was not successful. In communicating with the administrator about the adverse results, Law Firm stated the chances of success on appeal would be "nil." It further advised the administrator of the time for appeal. The administrator did not respond, and there was no appeal of the matter to the Fourth Circuit Court of Appeals.

Eventually, Law Firm elected to file a claim against the estate for attorneys' fees in connection with the procurement of the state tax refund. It sought one-third of the $30,650 state tax refund. The estate denied it was liable for any attorneys' fees. Law Firm presented four alternate theories to the probate court to justify its claim to attorneys' fees: (1) an express contract was created through the correspondence to the administrator (August 23, 1988; September 27, 1988) and the call of the attorney for the estate to Law Firm; (2) an implied contract was created by notice to the estate through Law Firm's correspondence which evidenced its efforts to secure a refund, and the failure of the estate to object to such actions; (3) Law Firm acted as authorized agent of Accounting Firm, which had been given a power of attorney by the estate; and (4) Law Firm was owed fees under the equitable doctrine of quantum meruit.

The probate court disallowed the claim. First, it found that the express contract included the contingency of success in federal district court. Law Firm was not successful in that action; therefore, it could not seek to reform the contract.

Second, the probate court found that Law Firm should not be allowed to recover on an implied contract basis. Nearly all of Law Firm's correspondence about this matter was directed to Accounting Firm, not to the estate. Moreover, there was a potential conflict between the interests of the estate and those of Accounting Firm. The court noted that a lawyer may represent clients with adverse interests only with the consent of each client after full disclosure of the possible effects of such representation. *See In re Anonymous Member of the S.C. Bar,* 315 S.C. 141, 432 S.E.2d 467 (1993). This conflict was not disclosed to the estate.

Third, the probate court considered Law Firm's power of attorney argument. The estate had given a power of attorney to Accounting Firm to act on its behalf. Accounting Firm in turn had given Law Firm a power of attorney to act on its behalf. After analyzing the relevant documents, the probate court concluded that the power of attorney given to Accounting Firm did not authorize it to hire anyone else; nor was the estate aware that its power of attorney was being used to hire Law Firm.

Finally, the probate court found that the elements of quantum meruit had not been satisfied: The services were not performed under such circumstances as would have reasonably notified the estate that Law Firm expected to be paid for its services by the estate, as opposed to Accounting Firm. Accordingly, the court disallowed Law Firm's claim for attorneys' fees.

Law Firm appealed to the circuit court, which then reversed the holding of the probate court. The circuit court's order addressed only one issue, namely, quantum meruit. The court did not consider Law Firm's other theories for seeking fees. The estate appealed, and in an unpublished opinion, the Court of Appeals affirmed in result. *In re Estate of Frank Preston Jones, Jr.,* Op. No. 96–UP–380 (S.C.Ct.App. filed October 29, 1996). It found that there was not a basis for awarding fees under quantum meruit; however, it held that the parties had

entered into an express contract, the terms of which were set out in the August 23, 1988 letter to the administrator. This Court granted the estate's petition for a writ of certiorari to review a single question:

> Did the Court of Appeals err in failing to find the express contract was contingent upon the successful recovery of a tax refund in federal court?

## LAW/ANALYSIS

The estate argues that the contract between Law Firm and the estate was contingent on the recovery of a tax refund in federal court. We agree.

The contractual provision between the parties must be read within the broader context of Law Firm's August 23, 1988 letter to the estate. The letter, authored by Law Firm's senior partner Wesley Walker, states that Mac Walters, an attorney with Law Firm, has done considerable work on and was instrumental in obtaining the refund from the S.C. Tax Commission. It further states:

> You are aware that Mac Walters submitted a statement for services to the interested parties but no one appears to have any interest in making payment. I will not belabor in this letter all the work that has been done but I must say that—like any other law firm or individual lawyer practitioner would be—we are not very happy about not being compensated for our services. In lieu of recounting our labors and services, *I propose in this letter a plan for further procedure which will please everyone if we are successful in a refund action against the United States (IRS) in Federal District Court.*

> In view of the extensive work previously done by Mac Walters in this case, we feel that we are in a position to recommend proceeding with a refund action in the United States District Court.... We believe that we are well qualified to go forward with this matter and with an appropriate compensation agreement, we are prepared to proceed forthwith.

*Naturally, we will not undertake the litigation without an appropriate compensation agreement. Such an agreement will properly take into consideration the work already done which resulted in the refund by the SCTC. We are willing to go forward with preparing the case and handling it in United States District Court on a contingent fee basis. We think that a contingent fee of one-third of the total amount recovered (including both principal and interest) would be reasonable. In setting this contingent fee, we will agree for it to include the total amount of our charges for all legal services rendered to this date.* We will file the suit and pursue it through the Fourth Circuit (if the District Court opinion is appealed) for one-third of the total amount recovered (taxes plus interest) from the IRS and SCTC. Of course, the Estate would reimburse us for all costs and expenses incurred in the representation (including those already paid or incurred, i.e. $310.38).

■ "A contingent fee is one which is made to depend upon the success or failure in the effort to enforce a supposed right, whether doubtful or not." *Adair v. First Nat. Bank,* 139 S.C. 1, 5, 137 S.E. 192, 193 (1927); *see also City of Burlington v. Dague,* 505 U.S. 557, 560–61, 112 S.Ct. 2638, 2640, 120 L.Ed.2d 449, 455 (1992) ("Fees for legal services in litigation may be either 'certain' or 'contingent' {or some hybrid of the two}. A fee is certain if it is payable without regard to the outcome of the suit; it is contingent if the obligation to pay depends on a particular result's being obtained."); *Alexander v. Inman,* 903 S.W.2d 686, 696 (Tenn.Ct.App.1995) ("Most jurisdictions would agree that a contingent fee arrangement is an agreement for legal services under which the amount or payment of the fee depends, in whole or in part, on the outcome of the proceedings for which the services were rendered."); *Martin v. Buckman,* 883 P.2d 185, 192 (Okla.App.1994) ("In simple terms, a contingent fee contract is one in which a client engages an attorney to represent her in the recovery of, say, a certain sum of money she claims is owed to her, and the attorney agrees to accept for his services a certain percentage of what he recovers either by settlement or by judgment."); Black's Law Dictionary 614 (6th ed. 1990) (defining "contingent fees" as "[a]rrangement between attorney and client

whereby attorney agrees to represent client with compensation to be a percentage of the amount recovered . . . .").

If we assume, in the present case, that the parties entered into a contract[1] through the August 23, 1988 letter, then the contractual language clearly evidences a contingent fee agreement. As the above authorities explain, a contingent fee agreement necessarily requires that a successful result be achieved before the fee is paid. In this case, the contract and other evidence in the record reveal that the contingency was success in procuring a refund in the federal litigation and that if that action was not successful, then there would be no fee paid. For example, the letter itself declares: " . . . I propose in this letter a plan for further procedure which will please everyone *if we are successful in a refund action* against the United States (IRS) in Federal District Court." (emphasis added). Moreover, an inter-office memo between members of Law Firm states: "In the final analysis, we will not file suit against Bill Jones as Administrator even though the failure to pursue an appeal will jeopardize our chances of collecting the fee on the South Carolina refund."

Law Firm argues that the prosecution of the claim was itself the fulfillment of the contingency; the one-third fee had already been earned, and it should have been paid by the estate when Law Firm proceeded with the federal action. This is an untenable position because under this interpretation, there would, in fact, be no contingency; the prosecution of the action, regardless of the results, would trigger the contingency. If the outcome of the suit is irrelevant to the fee to be extracted, then the agreement would not be contingent, but would be certain. Because the contractual language here set forth a contingency—one which ultimately was not fulfilled—Law Firm is entitled to no fee under the contract.

---

1. The question before this Court assumes a valid contract between the parties. Here, we have not been directly presented with the issue of whether a contract in fact existed. Accordingly, our decision should not be read to sanction the legal arrangement between Law Firm and the estate in the present case. The fact that an attorney's services have inured to the benefit of others does not necessarily give rise to a contractual relationship, absent a clear agreement between the parties. *See Rankin v. Superior Auto. Ins. Co.,* 237 S.C. 380, 117 S.E.2d 525 (1960); *see also Bowen & Smoot v. Plumlee, III,* 301 S.C. 262, 391 S.E.2d 558 (1990).

CONCLUSION

Based on the foregoing, we REVERSE the holding of the Court of Appeals inasmuch as the contingency of the contingent fee agreement was not satisfied. Accordingly, Law Firm is not entitled to the award of attorneys' fees.

WALLER and BURNETT, JJ., and GEORGE T. GREGORY Jr., and L. CASEY MANNING, Acting Associate Justices, concur.