**In re VARAT ENTERPRISES, INC., Debtor.**

**FIRST UNION COMMERCIAL CORPORATION, Plaintiff–Appellant,**

v.

**NELSON, MULLINS, RILEY AND SCARBOROUGH, Defendant–Appellee.**

No. 95–1950.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1995.

Decided April 23, 1996.

**ARGUED:** John Michael Booe, Petree Stockton, Charlotte, North Carolina, for Appellant. George Barry Cauthen, Nelson, Mullins, Riley & Scarborough, L.L.P., Greenville, South Carolina, for Appellee. **ON BRIEF:** Teresa DeLoatch, Petree Stockton, Charlotte, North Carolina, for Appellant. Robert W. Foster, Jr., A.M. Quattlebaum, Jr., Nelson, Mullins, Riley & Scarborough, L.L.P., Greenville, South Carolina, for Appellee.

Before MURNAGHAN and MICHAEL, Circuit Judges, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge MICHAEL and Senior Judge MICHAEL joined.

## OPINION

MURNAGHAN, Circuit Judge:

The present dispute arises from a voluntary bankruptcy petition filed by Varat Enterprises, Inc. ("Varat"), a clothing manufacturer located in South Carolina. Prior to the bankruptcy filing, the South Carolina law firm of Nelson, Mullins, Riley & Scarborough ("Nelson, Mullins") had represented Varat in various legal matters. Specifically, Nelson, Mullins obtained for Varat an arbitration award of $356,944.94 against Fitigues, Inc., in 1992.[1] Beginning in late 1991, Varat began experiencing financial difficulties and fell behind on its monthly payments to Nelson, Mullins for services rendered. After Varat filed for bankruptcy, the law firm ultimately asserted a secured claim which the bankruptcy and district courts ruled valid. First Union Commercial Corporation ("First Union"), Varat's largest creditor, now seeks to dispute Nelson, Mullins's claim.

### BACKGROUND

On March 15, 1993, Varat filed a voluntary petition for relief pursuant to Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101 et seq., in the Western District of North Carolina. Shortly thereafter, Nelson, Mullins filed an unsecured proof of claim asserting that Varat owed it $80,296.36 in legal fees and costs. After Varat filed a disclosure statement and a proposed plan of reorganization, Nelson, Mullins objected, claiming that the statement and plan—neither of which specifically addressed the owed attorneys fees—misclassified its claim as unsecured and impaired. The firm also filed an amend-ed proof of claim asserting that its outstanding fees and costs were secured by virtue of an equitable lien on the 1992 Fitigues arbitration award which had in the meantime been affirmed.[2] Varat did not object to Nelson, Mullins's amended claim. Instead, Varat filed an amended disclosure statement and plan of reorganization, inserting two new provisions: Paragraphs 2.8 and 8.8. Paragraph 2.8 established a classification for pre-petition, secured claims brought against Varat by its attorneys as follows:

2.8 *Class 8: Attorney Lien Claims.* This class is not impaired. Class 8 claims are the pre-petition claims, if any, against the Company by its attorneys that are secured under applicable non-bankruptcy law by a non-avoidable lien in the amount due the Company under any settlement agreement, arbitration award, or judgment. The Company will pay each allowed Class 8 claim out of the proceeds of the settlement agreement, arbitration award, or judgment to which the holder's lien attaches upon receipt of such proceeds.

Paragraph 8.8 specifically addressed the Fitigues matter, providing that "[t]he Arbitration Award, less the allowed amount of the Class 8 claim, if any, shall be paid to [First Union]." Believing that Class 8 specifically allowed its claim, Nelson, Mullins subsequently withdrew its objection at a September 16, 1993, hearing on the amended disclosure statement and supported the amended reorganization plan.

First Union, which had made several commercial loans to Varat and its president over the years,[3] also asserted a secured claim on various company assets, including the Fitigues arbitration award. First Union's claim for $7,935,368.00 was the only secured debt listed in Varat's disclosure statements or re-

---

**1.** After some dispute, the award was entered by the U.S. District Court for the Northern District of Illinois, *Fitigues, Inc. v. Varat Ent. Inc.*, 813 F.Supp. 1336, 1340 (N.D.Ill.1992), and affirmed by the U.S. Court of Appeals for the Seventh Circuit, *Fitigues, Inc. v. Varat Ent. Inc.*, 2 F.3d 1153 (7th Cir.1993) (unpublished). The proceeds were paid into an interest-earning bank account on or about October 1, 1993, where they have remained during the bankruptcy proceedings.

**2.** Nelson, Mullins filed the unsecured proof of claim on April 1, 1993. Nelson, Mullins thereafter filed the objection and amended proof of claim asserting secured status on September 15 and September 14, 1993, respectively, after the Seventh Circuit Court of Appeals had affirmed the award in August 1993.

**3.** Joshua E. Varat served as president and a principal shareholder of the company.

organization plans. At no time prior to confirmation of the amended plan did First Union assert any objections to Nelson, Mullins's claim or Varat's disclosure statements and proposed plans of reorganization. Instead, First Union, as the lender, voted in favor of the amended plan. During the November 8, 1993, confirmation hearing which both First Union and Nelson, Mullins attended, First Union accepted Varat's plan amendments in open court. The bankruptcy court then confirmed the amended plan on November 23, 1993. No appeal was taken.

On January 12, 1994, First Union objected to Nelson, Mullins's claim for the first time, asserting that the claim was not secured. After a hearing on the objection, the bankruptcy judge ruled, in an order entered on March 1, 1994, that Nelson, Mullins's claim was secured. The judge found that the amended plan allowed Nelson, Mullins' claim as unimpaired under Class 8 and that First Union was barred from objecting to the claim after confirmation of the plan. He ordered Varat to pay Nelson, Mullins $73,896.35, the amount Varat contended that it owed.[4]

First Union appealed the decision. A magistrate judge reviewed the case and recommended that the district court reverse the bankruptcy court's order. However, the district judge affirmed. First Union then sought reconsideration of the decision, but the district court denied the motion on March 30, 1995. First Union filed a notice of appeal to this court on April 27, 1995.

Both the bankruptcy and district courts determined that First Union was barred from objecting to Nelson, Mullins's claim after confirmation of the amended plan of reorganization. The courts found that First Union had voted in favor of the amended plan. In addition, although First Union knew Nelson, Mullins had asserted an equitable lien prior to the confirmation hearing and had ample opportunity to contest either the claim or the amended plan, it failed to raise any objections until nearly two months after confirmation. The courts further found that Nelson, Mullins reasonably relied on First Union's silence. Consequently, each court

held that Varat's amended plan allowed Nelson, Mullins's claim under Class 8 and ordered the debtor to pay the law firm.

## DISCUSSION

Our review of the district court's decision is plenary. *First Nat'l Bank of Maryland v. Stanley (In re Stanley),* 66 F.3d 664, 667 (4th Cir.1995). Like the district court, we review the bankruptcy court's findings of fact only for clear error, but consider the relevant legal questions *de novo.* Bankr. Rule 8013; *Stanley,* 66 F.3d at 667; *Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 399 (4th Cir.1992). Even if we find evidence to support a particular finding of fact, we must deem it clearly erroneous if, after considering all of the evidence, we are left with the definite and firm conviction that a mistake has been committed. *Green v. Staples (In re Green),* 934 F.2d 568, 570 (4th Cir.1991).

First Union contends that the lower courts improperly denied its claim. First Union asserts that its objection to Nelson, Mullins's claim was timely for two reasons: first, the absence of a deadline or period of limitation within which an objection must be filed; and second, Varat's amended plan expressly provided that the bankruptcy court would retain jurisdiction even after confirmation to determine disputed, pending and new claims, thus allowing post-confirmation objections. Because the amended plan made no specific mention of Nelson, Mullins's claim, First Union argues that the claim remained subject to the objection process even after confirmation. Furthermore, First Union maintains that the lower courts erred in finding Nelson, Mullins's claim allowed despite the plan's failure to identify it as such. We disagree with First Union on all accounts. In our view, both the bankruptcy and the district judges properly ruled First Union barred from contesting Nelson, Mullins's claim.

### I. *First Union's Objection*

#### A. *Res Judicata*

Under *res judicata* principles, a prior judgment between the same parties can

---

**4.** Nelson, Mullins stipulated to this amount at the February 17, 1994, hearing on First Union's objection.

preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication. *See* Restatement (Second) of Judgments, §§ 13 *et seq* (1982); *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Federal Deposit Ins. Corp. v. Jones,* 846 F.2d 221, 234–35 (4th Cir.1988). The doctrine encompasses two concepts: claim preclusion and issue preclusion, or collateral estoppel.[5] *Allen,* 449 U.S. at 94, 101 S.Ct. at 414. Rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented. *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983); *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1549 n. 3 (11th Cir.), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). Issue preclusion is more narrow and applies when the later litigation arises from a different cause of action. *Nevada,* 463 U.S. at 130 n. 11, 103 S.Ct. at 2918 n. 11. It operates to bar subsequent litigation of those legal and factual issues common to both actions that were "actually and necessarily determined by a court of competent jurisdiction" in the first litigation. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Combs v. Richardson,* 838 F.2d 112, 114 (4th Cir.1988).

■ The doctrine of *res judicata* applies in the bankruptcy context. *Brown v. Felsen,* 442 U.S. 127, 132, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Turshen v. Chapman,* 823 F.2d 836, 839 (4th Cir.1987). A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect. *Stoll v. Gottlieb,* 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938); *Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160, 162 (4th Cir.1993); *see also* 5 Collier on Bankruptcy ¶ 1141.01[1] (15th ed.1989). Pursuant to 11 U.S.C.

§ 1141(a), all parties are bound by the terms of a confirmed plan of reorganization. *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458, 463 (6th Cir.1991). Consequently, parties may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan, but failed to do so. *Turshen,* 823 F.2d at 839 ("The normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts.") (citation omitted); *see also Chattanooga Wholesale,* 930 F.2d at 463; *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374, 377 (9th Cir. BAP 1993) (listing cases), *aff'd,* 59 F.3d 175 (9th Cir.1995). More specifically, federal courts have consistently applied *res judicata* principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the confirmation order. *See, e.g., Department of Air Force v. Carolina Parachute Corp.,* 907 F.2d 1469, 1473–74 (4th Cir.1990); *Justice Oaks,* 898 F.2d at 1552.

■ Generally, claim preclusion occurs when three conditions are satisfied: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding. *Kenny v. Quigg,* 820 F.2d 665, 669 (4th Cir.1987); *see also Justice Oaks,* 898 F.2d at 1550 (listing same criteria as four elements). We find all three criteria present in the case before us.

■ First, as discussed above, the confirmation order constitutes a final judgment on the merits with *res judicata* effect. Here, the order confirming the plan is valid. The bankruptcy court's jurisdiction over the confirmation of the plan is undisputed. In addition, it appears that the court gave adequate

---

**5.** The doctrine of *res judicata* generally refers to the law of former adjudication. Although the term *"res judicata"* is sometimes used to refer to the rules of claim preclusion, just as "collateral estoppel" is used to mean issue preclusion, *see*

*Allen v. McCurry,* 449 U.S. 90, 94 n. 4, 101 S.Ct. 411, 414 n. 4, 66 L.Ed.2d 308 (1980), we will use the term to refer to the broader doctrine as a whole.

notice of the confirmation hearing and properly conducted the proceeding. *See* Bankr. Rule 3020(b). Second, the parties to the present dispute attended and participated in the confirmation proceeding.[6]

Third, First Union's objections stem from the same cause of action at issue in the confirmation proceeding. Generally, claims are part of the same cause of action when they arise out of the same transaction or series of transactions, *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987), or the same core of operative facts, *Heritage Hotel*, 160 B.R. at 377–78. In this case, First Union's objections to Nelson, Mullins's claim revolve around the same facts that gave rise, in part, to the amended plan—namely, the Fitigues arbitration proceeding and award, Nelson, Mullins's unpaid legal fees and costs, and Varat's bankruptcy. Therefore, the order confirming the plan was based, in part, on the transaction at the core of First Union's present claims. *See Justice Oaks*, 898 F.2d at 1551–52.

First Union has suggested that it failed to assert its objection earlier because it was not fully aware of the facts or the law surrounding the situation. Actual knowledge of a potential claim however is not a requirement for application of *res judicata* principles. *Harnett*, 800 F.2d at 1313. "For purposes of *res judicata*, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls." *Id.* We find from the record in the present matter not only that First Union's claim existed at the time of confirmation, but that First Union was aware, or should have been aware, of the existence of that claim.

Clearly, Varat drafted and added Class 8 to its plan of reorganization in response to Nelson, Mullins's objection to its original plan. There is no evidence to the contrary. Paragraph 2.8, which defines Class 8 "Attorney Lien Claims," describes a class of potential claims for owed attorneys fees. Neither that paragraph nor any other provision of the amended plan specifically mentions Nelson, Mullins or its claim for unpaid fees and costs. Yet the language of Paragraph 2.8 is clear and unambiguous, and unmistakably encompasses Nelson, Mullins's claim as asserted in its amended proof of claim. The law firm claimed "an equitable lien on proceeds of arbitration award" in the amount of $80,-296.36 for "services rendered." Paragraph 2.8, which was added after the filing of the amended claim, states that Class 8 includes "the pre-petition claims, if any, against the Company by its attorneys that are secured under applicable non-bankruptcy law by a non-avoidable lien in the amount due the Company under any settlement agreement, arbitration award or judgment." Despite its somewhat conditional tone, Paragraph 2.8 nonetheless offered a sufficient basis for an objection by First Union by expressly addressing claims for unpaid attorneys fees, which First Union knew Nelson, Mullins asserted. A review of the entire plan reveals Class 8 to be the only class that conceivably contemplated Nelson, Mullins's claim.

Combining logic with its knowledge that Nelson, Mullins claimed Varat owed it thousands of dollars in unpaid legal fees and costs, First Union certainly should have anticipated that Varat, the law firm, and the bankruptcy court would interpret Class 8 as covering Nelson, Mullins's claim, thus designating the firm as the holder of a secured and unimpaired claim. If First Union disagreed with that characterization, it should have—and very clearly could have—objected before confirmation. As a party in interest, First Union received copies of Varat's original plan and amended version, and most likely received notice of Nelson, Mullins's objection to the original plan and its amended proof of claim. Nelson, Mullins withdrew its objection at a public hearing where First Union could have raised its objection. First Union attended and participated in the confirmation hearing, where again it had an opportunity to object. For all of these rea-

---

**6.** A party for the purposes of former adjudication includes one who participates in a Chapter 11 plan confirmation proceeding. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1551 (11th Cir.), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990).

sons, the bankruptcy and district courts properly found that First Union could have objected to the amended plan or to Nelson, Mullins's claim at any point in the process leading up to confirmation, but failed to do so.

When all of the requirements for claim preclusion are satisfied, the judgment in the first case acts as an absolute bar to the subsequent action with regard to every claim which was actually made or and those which might have been presented. *Justice Oaks,* 898 F.2d at 1552. Again, the principle holds true in bankruptcy matters. Once a plan is confirmed, neither a debtor nor a creditor can assert rights that are inconsistent with its provisions. *Stoll,* 305 U.S. at 170–71, 59 S.Ct. at 136–37. In its post-confirmation objection, First Union argues that no legal basis supported Nelson, Mullins's alleged secured status or the firm's asserted equitable lien. Because First Union could have raised the contentions in a pre-confirmation objection or at the confirmation hearing, it is barred from litigating them now. We hold that the confirmation order precludes consideration of First Union's present objections on the merits.[7]

B. *Equitable Estoppel and Waiver*.

Two related, but distinct, equitable principles also operate to bar First Union's present action. The doctrine of equitable estoppel allows "a person's act, conduct or silence when it is his duty to speak," to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action. Black's Law Dictionary 538; *see also Jones,* 846 F.2d 221 at 234 (quoting *Dickerson v. Colgrove,* 100 U.S. 578, 580, 25 L.Ed. 618 (1879)). The rule "is designed to protect any adversary who may be prejudiced by the attempted change of position." *Guinness PLC v. Ward,* 955 F.2d 875, 899 (4th Cir.1992). The doctrine applies in the bankruptcy context when four criteria are met: 1) the party estopped knew the relevant facts; 2) the party estopped intended for its conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so intended; 3) the party acting was ignorant of the true facts; and, 4) the party acting relied on the conduct to its injury. *Heritage Hotel,* 160 B.R. at 378; *In re Burkey Lumber Co. of Grand Junction, Colo.,* 149 B.R. 177, 180 (Bankr. D.Colo.1993); *see also In re Momentum Manufacturing Corp.,* 25 F.3d 1132, 1136 (2nd Cir.1994).

Similarly, traditional waiver principles come into play when a party voluntarily or intentionally relinquishes a known claim right. It also applies in the bankruptcy context. *See Justice Oaks,* 898 F.2d at 1553. Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike. 11 U.S.C. § 1141(a). A claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); *Resolution Trust Corp. v. Murray (In re Midway Partners),* 995 F.2d 490, 494 (4th Cir.), *cert. denied sub nom. Scheffey v. Resolution Trust Corp.,* —— U.S. ——, 114 S.Ct. 599, 126 L.Ed.2d 564 (1993). Therefore, a party in interest's failure to object to a claim made on a debtor's assets prior to confirmation of the debtor's reorganization plan may operate as a waiver, barring the party from asserting the objection later. *See Justice Oaks,* 898 F.2d at 1553; *Simmons v. Savell (In re Simmons),* 765 F.2d 547, 553 (5th Cir.1985).

Here, Nelson, Mullins filed a proper proof of claim. As Varat's primary lender, First Union was a party in interest[8] and had a right to object to that claim. 11

---

7. First Union also is collaterally estopped from raising its objections. When a confirmed plan discloses and specifically treats a creditor's claim, and another interested party has had a full and fair opportunity to contest the claim, that party cannot collaterally attack the bankruptcy court's order or confirmation. *Matter of Howe,* 913 F.2d 1138, 1147 (5th Cir.1990); *Combs v. Richardson,* 838 F.2d 112, 114 (4th Cir.1988). As discussed *supra,* First Union had a full and fair opportunity both before and during confirmation to raise the objections it seeks to make here. Thus, the court's order confirming Varat's plan and allowing Nelson, Mullins's claim resolved those issues and precludes First Union from relitigating them now.

8. All creditors of a debtor are parties in interest. *Justice Oaks,* 898 F.2d at 1551 n. 5.

U.S.C. § 1128(b). Bankruptcy Rule 3007 sets forth the procedure for filing an objection to a claim, but provides no time limits for doing so. Some circuits, however, have found a deadline implicit in several provisions of the Bankruptcy Code. *See Simmons,* 765 F.2d at 553 (barring an objection to a secured claim which was filed after confirmation of a Chapter 13 plan by interpreting 11 U.S.C. § 506(a) [9] to mean that "a proof of a secured claim must be acted upon—that is, allowed or disallowed—before confirmation of the plan or the claim must be deemed allowed for purposes of the plan"); *see also Justice Oaks,* 898 F.2d at 1553 (finding *Simmons* to stand for the proposition that an objection to a claim based on the grounds that it was misclassified in the reorganization plan must be made prior to confirmation of the plan and then applying that rule in a Chapter 11 case to bar a post-confirmation objection). Furthermore, bankruptcy creditors generally bear the burden of policing the plan's treatment of claims. *Matter of Gregory,* 705 F.2d 1118, 1123 (9th Cir.1983) (concluding that creditor who ignores bankruptcy proceedings by failing to object does so at his own peril); *In re Williams,* 166 B.R. 615, 619 (Bankr.E.D.Va.1994) (same); *see also In re Linkous,* 990 F.2d at 163 ("[W]e do expect creditors to take some responsibility in the bankruptcy process or lose their rights.").

In the matter before us, First Union disputes the alleged secured status of Nelson, Mullins's claim and its asserted equitable lien. Both Varat and the bankruptcy court implicitly interpreted the plan as classifying Nelson, Mullins's claim as a secured Class 8 claim by failing otherwise to characterize it and by confirming the plan. First Union has essentially argued that the amended plan misclassified the claim. Following the lead of the Fifth and Eleventh Circuits, we hold that First Union lost its right to object to Nelson, Mullins's claim when the bankruptcy court confirmed Varat's amended plan.

■ Furthermore, and more formally, we find that all four elements necessary to invoke equitable estoppel have been satisfied in the present matter. First, First Union knew the critical facts. It knew that Nelson, Mullins claimed a secured debt, that Varat created Class 8 in response to Nelson, Mullins's objection, that Class 8 most likely covered Nelson, Mullins's claim, that inclusion in Class 8 would designate Nelson, Mullins's claim as secured and unimpaired. Second, Nelson, Mullins had a right to assume that it could rely on First Union's conduct. First Union did not object to Nelson, Mullins's claim prior to the confirmation hearing, nor did it object to the disclosure statement and proposed reorganization plan. Instead, First Union accepted the amended plan at the confirmation hearing. Thus Nelson, Mullins had reason to believe that First Union had no objections to its claim or to the claim's logical classification in Class 8. Third, Nelson, Mullins was unaware of any opposition by First Union because First Union took no action that reasonably demonstrated its dissatisfaction.[10] In fact, First Union's conduct suggested just the opposite. Fourth, Nelson, Mullins reasonably relied upon First Union's silence and passivity in withdrawing its own objection. A claimant has a right to believe that he can rely upon a debtor's affirmative statements that there is no dispute as to the amount and validity of its particular claim and that it shall be treated in a certain way.

**9.** Section 506(a) applies to Chapter 11 proceedings as well and provides that when a creditor files proof of a secured claim, the value of the creditor's interest in the estate "shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest." 11 U.S.C. § 506(a).

**10.** First Union argues that Nelson, Mullins was not ignorant of the true facts because the firm knew all along that it had only an unsecured claim. First Union cites as evidence an August 4, 1992, letter from Nelson, Mullins to Varat in which the firm describes its position as that of an unsecured creditor and Nelson, Mullins's origi-

nal proof of claim, filed on April 1, 1993, which asserted only an unsecured claim. However, under South Carolina law, an equitable lien does not arise until after the judgment to which the lien is attached is rendered. *First Federal Sav. and Loan Ass'n of Charleston v. Bailey,* —— S.C. ——, 450 S.E.2d 77, 81 (Ct.App.1994). Therefore, because its secured claim could not have arisen until the Seventh Circuit Court of Appeals affirmed the Fitigues award on August 18, 1993, Nelson, Mullins acted properly in amending its proof of claim to assert a secured claim only afterwards, and the documents are irrelevant to the amended claim.

*Burkey Lumber,* 149 B.R. at 180–81. Here, there were no affirmative statements, but there was deliberate conduct by Varat indicating that the company had no dispute with Nelson, Mullins's claim. Together, Varat's acceptance and First Union's failure to object operated to assure Nelson, Mullins that its position was secure and undisputed. Nelson, Mullins is unlikely to have voluntarily withdrawn its objection if uncertain of its status. As a Class 8 claimant, Nelson, Mullins's position under the amended plan was secured and unimpaired. Under the Bankruptcy Code, an unimpaired creditor has virtually no ability to vote against a plan of reorganization. 11 U.S.C. § 1129(a)(7) & (8). It is logical to conclude, therefore, that Nelson, Mullins would not have accepted such a powerless position if it expected its secured claim to be disputed. The reasonableness of Nelson, Mullins's interpretation of the amended plan and reliance on First Union's silence is further demonstrated by the fact that Class 8 is the only class in the amended plan that could have possibly included its claim.

Thus we conclude that First Union's failure to raise any objections to Nelson, Mullins's claim prior to confirmation of Varat's amended plan operates as a waiver and equitably estops the lender from subsequently contesting the claim.

## II. *Nelson, Mullins's Lien*

### A. *Nature of Lien*

██ Finally, we turn to the nature of Nelson, Mullins's lien. The law firm has asserted that it holds an equitable lien on the 1992 arbitration award, while First Union has argued otherwise. The bankruptcy court declined to characterize Nelson, Mullins's lien, finding it unnecessary to do so in light of the court's conclusion that the amended plan allowed the claim as asserted and that First Union was barred from objecting to it after confirmation. While the magistrate court concluded that Nelson, Mullins did not have a valid equitable lien under South Carolina law, the district court rejected its recommendation. We review the district court's legal determination *de novo.*

██ For an equitable lien or charge to arise as to specific property, there must be: 1) a debt, duty or obligation between the parties; 2) specific property or res to which the debt or obligation attaches; and 3) an intent, express or implied, that the property serve as security for the payment or obligation. *First Federal Sav. and Loan Ass'n of Charleston v. Bailey,* 450 S.E.2d 77, 80 (S.C.Ct.App.1994); *Carolina Attractions, Inc. v. Courtney,* 287 S.C. 140, 337 S.E.2d 244, 247 (Ct.App.1985). A mere breach of contract does not result in an equitable lien, even though the fund against which the lien is claimed was created through the efforts of the party seeking payment. *Carolina Attractions,* 337 S.E.2d at 247. South Carolina law recognizes an "attorney's charging lien" as a device for securing payment of fees and costs owed to an attorney for his services out of any judgment or recovery obtained through the attorney's efforts. *Eleazer v. Hardaway Concrete Co.,* 281 S.C. 344, 315 S.E.2d 174, 177 (Ct.App.1984). The scope of the lien is limited, though, to costs and disbursements. *Id.* "A lien for the payment of an attorney's fee out of the proceeds of a judgment obtained through the attorney's efforts, however, may be created by an express agreement between an attorney and his client." *Id.*

In the matter before us, the first and second criteria for an equitable lien are clearly met. Varat admitted to the bankruptcy court that it owed Nelson, Mullins for unpaid legal fees and costs. In addition, Nelson, Mullins has claimed that the debt, which arose from its provision of legal services, is attached to a specific *res,* the arbitration award.

The third element is more difficult to assess. The record reveals no express understanding between Varat and its law firm that the arbitration award would provide security for the payment of the owed fees and costs. Varat's president testified before the bankruptcy court that there was no express agreement pertaining to the award. In addition, the letters that passed between Nelson, Mullins and Varat about the owed attorneys fees provide no evidence of any arrangement concerning the award. However, Varat's

conduct after it filed its bankruptcy petition can be seen as manifesting an implicit intent to grant Nelson, Mullins an equitable lien in the arbitration award. Varat not only changed its plan of reorganization to create a class of claims encompassing Nelson, Mullins's debt, but it never disputed the firm's assertion of an equitable lien on the arbitration award. Because that conduct suffices to show implicit intent on the part of Varat to create an attorney's lien on the arbitration award and thus to estop Varat from challenging Nelson, Mullins's equitable lien, we find that it necessarily serves to estop First Union from doing so as well.

### B. *Amount of Lien*

Nelson, Mullins does not contest the lower courts' finding that the law firm's lien is in the amount of $73,896.35, but First Union argues that the sum cannot possibly be that high. We review the lower courts' factual findings for clear error.

 As we have observed, a common law attorney's lien in South Carolina covers only costs and disbursements incurred in the relevant matter, not legal fees. *Eleazer*, 315 S.E.2d at 177. An attorney is entitled to a fee based on the reasonable value of the services performed in the absence of a contract establishing the amount of compensation. *Id.* at 178; *Adair v. First Nat'l Bank of Clinton*, 139 S.C. 1, 137 S.E. 192, 192 (1927). If a specific agreement exists between an attorney and his client setting the amount the attorney is to be paid, however, that contract determines the extent of the lien. *Eleazer*, 315 S.E.2d at 178; *Adair*, 137 S.E. at 192. In the present matter, Varat and Nelson, Mullins did have a specific understanding regarding compensation rates and billing practices whereby the company made immediate payment to the firm on the basis of monthly invoices for services rendered. Although we find no express understanding that payment of the fees owed in connection with the Fitigues arbitration matter was secured by any recovery that might

be obtained, we do find an implicit intent to do so, as discussed above.

Varat has not disputed the amount Nelson, Mullins said the company owed in relation the Fitigues matter.[11] Nor has Varat contested the courts' orders that it pay Nelson, Mullins $73,896.35, despite the company president's testimony that the amount claimed by Nelson, Mullins included its fees for all legal work performed for Varat and billing records indicated that only $60,026.75 was outstanding in 1993 in relation to the arbitration matter. Moreover, we find no indication that Varat, the lower courts, or anyone else thought the fee as stated was unreasonable. Because the client has failed to contest the amount of the attorney's lien, it makes little sense to allow a third party standing outside the attorney-client relationship to claim that the determination of amount was clearly erroneous. Therefore, we affirm the lower courts' findings that Nelson, Mullins's lien is in the amount of $73,896.35

### CONCLUSION

In sum, we uphold the factual and legal determinations made by the bankruptcy and district courts. First Union is properly precluded from objecting to the allowed claim of Nelson, Mullins after confirmation of the amended bankruptcy plan under the doctrines of *res judicata*, equitable estoppel and waiver. Accordingly, the matter in all respects is

*AFFIRMED.*

---

**11.** Varat clarified that amount as $73,896.35 at the confirmation hearing and Nelson, Mullins conceded.