Elizabeth A. REEVES, et al., Plaintiff,

v.

ST. MARY'S COUNTY COMMISSIONERS, et al., Defendants.

No. CIV.A.AW–02–2449.

United States District Court,
D. Maryland,
Southern Division.

June 13, 2003.

---

Elizabeth A. Reeves, c/o Mr. Li Bin, Chongquing, China, Pro se.

Daniel Karp, Allen Karpinski Bryant and Karp PA, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Elizabeth A. Reeves ("Plaintiff") filed a second suit in this Court against ʳSt. Mary's County Commissioners, the St. Mary's County Board of Appeals, and numerous individual defendants (collectively, "Defendants") alleging a "Taking" under the Fifth Amendment, violations of Plaintiff's Due Process rights, and an unreasonable restraint of trade under the Sherman Act. By stipulation of both parties, the Sherman Act claim was dismissed leaving only the constitutional claims remaining.[1] Currently pending before the Court is the motion for summary judgment filed by Defendants [Paper No. 41] and Plaintiff's cross-motion for summary judgment [Paper No. 45]. The motion has been fully briefed by both parties. No hearing is deemed necessary. See D. Md. R. 105.6.[2] Upon consideration of the arguments made in support of, and opposition to, the cross-motions, the Court makes the following determinations.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following underlying and procedural facts are not in dispute. The core of the litigation revolves around a denial by the Board of Appeals for St. Mary's County ("Board") of Plaintiff's application for a conditional use permit to construct an Alzheimer's facility on her land. Plaintiff wished to construct an Alzheimer's facility on land she owned in St. Mary's County ("County"). She proposed a 100–bed care facility three stories in height and 60,000 square-feet in area, not including the area to be distributed for parking. The proposal was for a conditional use in the Rural Preservation District.

A public hearing was held regarding Plaintiff's application, at which witnesses testified for and against the proposal. The Board of Appeals by written Order and Decision dated July 23, 1999 held that the proposal did not meet the majority of

---

1. Plaintiff repeatedly states in filings with the Court that the Court has denied her a "contractual" right to amend her Complaint to assert new charges against the Defendants. She bases this claim on the stipulation of dismissal. The stipulation of dismissal could not have been clearer, however, that Plaintiff was to amend her Complaint to *reflect* the fact that her Sherman Act claim was dismissed. Instead, she attempted to file an Amended Complaint containing numerous other legal theories and allegations. The Court was as a result forced to reject her motion to amend the Complaint.

2. Plaintiff's has made numerous requests for an "evidentiary" hearing on the motions for summary judgment. First, any hearing would only address the legal arguments briefed fully in the cross-motions; it would not be a chance for either party to bring witnesses or to present evidence. Second, the Court fails to see how any hearing would be helpful in determining the disposition of the cross-motions, especially in light of the broad evidentiary record from which the Court can make its ruling.

Standards General and that Plaintiff was not entitled to a conditional use permit. On August 20, 1999, Plaintiff filed a petition for judicial review of the denial with the Circuit Court for St. Mary's County. While that appeal was pending, Plaintiff filed another proposal for an "Assisted Living Village". In a letter to Plaintiff, a county employee informed her, *inter alia,* of a zoning ordinance which stated that no application for development could be re-submitted after a previous Board rejection for two years, unless the new application was substantially different than the first.

While the "new" proposal was pending, Plaintiff filed a complaint of discrimination with the United States Department of Housing and Urban Development ("HUD") alleging that the Board had discriminated against her in denying the conditional use application. The complaint alleged discrimination on the basis of "race and handicap" against the Board, the Office of Planning and Zoning, and each member of the Board.

Meanwhile, the Circuit Court affirmed the denial of the original application on April 27, 2000. Plaintiff appealed that decision to the Court of Special Appeals. On June 2, 2002, Plaintiff's engineer sent a "revised" concept plan for the second application. On July 21, 2001, Plaintiff filed for Chapter 13 Bankruptcy.

The County's Director of Planning and Zoning informed Plaintiff's engineer that the "new" application would required a public hearing. The hearing was scheduled for December 14, 2000. By letter dated November 27, 2000, the County Attorney informed Plaintiff that there were concerns as to whether a quorum of the Board would exist at the public hearing to hear her "new" application. The concerns were based on the fact that Board mem-

bers might feel compelled to recuse themselves considering there was a pending complaint of race discrimination logged against all of them. The County Attorney recommended to Plaintiff that she proceed directly to the Circuit Court, stating that he would recommend that the question of her application be certified directly.

The property was sold at a foreclosure sale on February 28, 2001. In light of the foreclosure sale, the issue of Plaintiff's second application was tabled. In an unpublished decision by Chief Judge Murphy for the Court of Special Appeals, the Court affirmed the Board's denial of Plaintiff's application. The Court noted the Board's original reasons for denying the application which included, *inter alia,* the detrimental effect the proposal could have on the public safety and the disruptive impact it would have on the local community. Although applying a deferential standard, the Court agreed with Circuit Court's findings that Plaintiff "was not entitled to a conditional use permit to construct the proposed facility." The Court held that the "evidence presented to the Board was sufficient to support a finding that appellant did not satisfy the statutory requirements for this permit." Plaintiff filed a motion to reconsider, which was denied. The Maryland Court of Appeals and the Supreme Court, respectively, denied certiorari.

Plaintiff's first suit against Defendants in this Court ("Reeves I") was filed on July 20, 2001, with Plaintiff amending her Complaint on July 23, 2001.[3] In the Complaint, Plaintiffs alleged violations of the Fair Housing Act and violations of Plaintiffs' civil rights in violation of 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3). The facts in Reeves I concern the

---

**3.** While the Defendants were identical, other "plaintiffs" in Reeves I were 100 John Does, who were prospective occupants of the denied Alzheimer's facility.

Board's denial of Plaintiff's application for a use permit. Notably, although the Complaint revealed allegations of race and sex discrimination, it also concerned what Plaintiff characterized as "restrictive covenants" preventing Plaintiff from developing the commercial facility that she wanted.

The second suit ("Reeves II") was filed on July 23, 2002. The Amended Complaint-which is the operative document in this case-was filed on August 26, 2002. The named Defendants in the second action included: Julie Randall, Dan Raley, Thomas Mattingly, Joseph Anderson, Shelly Guazzo, County Commissioners of St. Mary's County, Rocky Rowland, Margaret Abraham, Terry Miller and Susan McNeil (among others). All of these Defendants were named in Reeves I. In her fact section of the Complaint, Plaintiff "incorporated" all of the facts and pleadings of her state appeals and, importantly, of Reeves I.

On February 5, 2003, as the, discovery deadline in the case was approaching, Plaintiff informed the Court that she would be in China for a six-month period ending in July. She sought an extension of discovery, essentially asking the Court to stay the action while she traveled. That motion was denied.

## II. SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985).

In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2729.1 (3d.1998). The non-movant must show that she has access to admissible evidence for presentation at trial. *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See id.* at 317, 106 S.Ct. 2548 (1986). For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505

(1986). While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

Both parties have moved for summary judgment arguing that there are not disputed fact issues and that the case is ripe for disposition as a matter of law. Despite Plaintiff's repeated reference to collateral legal arguments, only two issues remain in the case: the allegation that the use permit denial constituted an unlawful "Taking", and the allegation that "procedural irregularities" in the application process caused a denial of Plaintiff's rights to Due Process. Defendants have come forward with three arguments for why judgment as a matter of law should be entered in their favor: (1) Plaintiff's entire claim is barred by the doctrine of *res judicata* (i.e., claim preclusion); (2) her takings claims should be dismissed because they are not ripe; and (3) even if the claims are not barred and are found to be ripe, the actions of the Board do not as a matter of law constitute an unlawful taking or a Due Process violation. Plaintiff responds the actions of the Board constitute a constitutional violation as a matter of law.

Having reviewed the record before it, including all of the pleadings and the parties' evidentiary submissions[4], the Court makes the following conclusions of law: (1) Plaintiff's takings claims are not ripe for adjudication; (2) to the extent that there is a stand-alone procedural due process

claim, it is barred by the doctrine of *res judicata,* as would be the takings claims were they ripe for adjudication; and (3) even if the procedural due process claim was not barred by claim preclusion, Plaintiff has apparently disavowed it in her pleadings.

### A) *Ripeness*

 Defendants argue that the takings claim should be dismissed because the takings allegations are not ripe for adjudication. "Federal courts cannot adjudicate takings claims premised on use restrictions until the relevant state or state agency has had an opportunity to make a definitive decision and the property owner has exhausted available state avenues for compensation." *Seventh Regiment Fund v. Pataki,* 179 F.Supp.2d 356, 361–62 (S.D.N.Y.2002)(citing *Williamson Co. Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 193–94, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). Thus, a claimant must satisfy two elements to show that the takings claim is ripe for adjudication. First, a property-owner must show that the entity charged with implementing the zoning ordinance or land use regulation made a final decision in its application of the ordinance to the plaintiff's desired use. *Williamson County,* 473 U.S. at 186–88, 105 S.Ct. 3108; *Palazzolo v. Rhode Island,* 533 U.S. 606, 618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). Second, the plaintiff must show that after review by the state or a state compensation agency, the state actually denied the plaintiff compensation for the taking. *Williamson County,* 473 U.S. at 195, 105 S.Ct. 3108; *see also Hazen v. Anne Arundel County,* 2003 WL 504864, at *2–3 (D.Md.2003)(citing two elements that

4. Contrary to Plaintiff's assertion, the parties have participated in lengthy discovery over the course now of over four years.

plaintiffs must establish to show that a Takings claim is ripe for adjudication in federal court).

■ For the following reasons, and based on the *Williamson County* requirements, the Court holds that neither Plaintiff's claim based upon the denial of her Alzheimer's facility nor on the alleged denial of her Assisted Living Village are ripe for adjudication. First, on the question of the Alzheimer's facility, there was a final decision rendered by the Board. Her claim as to that facility is not ripe, however, because she has made no showing that she sought compensation for that alleged taking through normal avenues in the state system (e.g., state compensation procedures or filing suit in state court). Plaintiff asserts that the claim is ripe because she could not pursue compensation in state court because federal courts have "exclusive jurisdiction" over takings claims. The proposition is false; and, in any event, it flies in the face of *Williamson County*, which specifically holds that plaintiffs must pursue compensation through the state system before a takings claim becomes ripe. By not seeking compensation for the alleged taking in the state system, Plaintiff has failed to satisfy the first prong of *Williamson County*, causing her claim to not be ripe for adjudication.

■ The takings claim as to the Assisted Living Village is also not ripe but for a different reason. Plaintiff has presented no evidence that a final decision from the Board came down before she sued in federal court. Plaintiff was given the opportunity to proceed directly to the Circuit Court because of the potential failure of the Board to. make a quorum to consider her second proposal. She did not pursue that claim and, in the end, her property was sold in foreclosure. There having been no rejection of the Assisted Living Village application, the claim is also not ripe. Because the claims are not ripe, the Court lacks subject matter jurisdiction to hear the claims.

### B) *Res Judicata/Claim Preclusion*

Defendants have alternatively argued that Plaintiff's claims are claim precluded. Although the Court has already held that it lacks subject matter jurisdiction over the takings claims, it has concluded that it would be prudent to undertake the claim preclusion analysis for the following reasons. First, it is unclear whether Plaintiff has alleged a stand-alone "procedural due process" claim. If so, that claim would not be subject to similar ripeness issues.[5] Second, the Fourth Circuit has yet to publish a decision applying the doctrine of ripeness as it applies to takings claims as set out in *Williamson County* and its progeny. If upon review, the Court of Appeals were to hold that Plaintiff's claims were ripe for adjudication, the Court believes it is the interest of all parties for the Court to have analyzed the arguments under the doctrine of claim preclusion.

Defendants assert that because her claims arise out of the same transactions

---

**5.** It is unclear whether "procedural due process" claims are subject to the same ripeness requirement as unlawful takings claims, *see Bigelow v. Michigan Dep't of Nat'l Resources,* 970 F.2d 154 (6th Cir.1992), and the Fourth Circuit has apparently not had the opportunity to discuss the issue. While the Court could understand how *Williamson County* would apply to the need for "finality"-a need for a prospective plaintiff to receive a final decision before she brings a Due Process claim-the Court fails to see how the second-prong (requiring that the Plaintiff seek "just compensation") would apply in "procedural due process" cases, since those cases do not involve a plaintiff seeking any "compensation". As such, Plaintiff's stand-alone Due Process claims, at least as it pertains to the Alzheimer's facility, would be ripe because she received a final decision from the Board.

and events of Reeves I, and because Plaintiff could have asserted her constitutional claims as part of that action, her causes of action are now barred by the doctrine of claim preclusion. Defendants argue that Plaintiff has merely changed her legal theories, failing to assert claims based upon separate and distinct factual circumstances. To the extent the Court can distill Plaintiff's arguments in response, she opposes the use of claim preclusion arguing, *inter alia*, that (a) the constitutional claims were not actually litigated in the previous action; (b) certain provisions of the Bankruptcy Code preclude use of the claim preclusion doctrine; and (c) the case is not barred by the state courts' decisions on appeal.

■ "It is well established that the doctrine of *res judicata* bars the re-litigation of matters previously litigated between the parties and their privies, as well as those claims that *could have been asserted* in the original suit." *Anyanwutaku v. Fleet Mortgage Group, Inc.*, 85 F.Supp.2d 566, 570 (D.Md.2000)(emphasis in original)(citing *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir.1999)); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir.1996)("Rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim *that might have been* presented.")(emphasis added). As opposed to claim preclusion, which bars entire causes of action, "[i]ssue preclusion is more narrow and applies when the later litigation arises from a different cause of action . . . . It operates to bar subsequent litigation of those legal and factual issues common to both actions 'actually and reasonably determined by a court of competent jurisdiction' in the first litigation." *First Union*,

81 F.3d at 1315 (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

■ "Generally, claim preclusion occurs when three conditions are satisfied: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." *First Union*, 81 F.3d at 1316. There can be no legitimate doubt but that the first two prongs of this test are met in this case. First, the summary judgment in favor of Defendants in the prior action was a final judgment. Second, the parties in the two cases are virtually identical. The only real question that merits analysis is whether the claims are "identical for claim preclusion purposes." *Pittston*, 199 F.3d at 704.

■ "Generally, claims are part of the same cause of action when they arose out of the same transaction or series of transactions, or the same core of operative facts." *First Union*, 81 F.3d at 1316 (internal citations omitted). The Fourth Circuit recently elaborated on the analysis applicable to determining whether a claim arose from the same "transaction" or operative facts:

No simple test exists to determine whether causes of action are identical for claim preclusion purposes, and each case must be determined separately within the conceptual framework of the doctrine. Generally, the court must balance the interests of the defendant and of the courts in bringing litigation to a close against the interest of the plaintiff in not being denied the right to prosecute a valid claim. The expression 'transaction' in the claim preclusion context 'connotes a natural grouping or

common nucleus of operative facts.' Among the factors to be considered in deciding whether the facts 'are so woven together' that they constitute a single claim 'are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.'

*Pittston*, 199 F.3d at 704 (internal citations omitted). When claims arise out a single nucleus of operative of fact (or out of the same "transaction"), they will be barred even if they involve different harms or different legal theories. *Anyanwutaku*, 85 F.Supp.2d at 571; *White v. Harris*, 23 F.Supp.2d 611, 616 (D.Md.1998).

██ The law on claim preclusion in this Circuit compels the conclusion that Plaintiff's entire cause of action is barred. The record reveals that the constitutional claims asserted in Reeves II and the FHA/race discrimination claims in Reeves I share the exact same nucleus of operative fact; in fact, the Court is hard pressed to find *any* facts that are essential to one and not the other. In both cases, the allegations against the Board and the individual defendants revolve wholly around the denial of Plaintiff's application for a use permit. In one, Plaintiff claimed that the denial of the use permit was based upon unlawful discrimination based upon race or sex, or that it was in violation of the Fair Housing Act. In the second, Plaintiff claims that the denial of the use permit was an unlawful taking, and/or that the Board members acted in violation of Plaintiff's Due Process rights. All of the facts and all of the parties are identical. In accordance with the *Pittston* factors, the Court finds that her claims could have been brought in Reeves I: the two cases share the exact same "time, space, origin or motivation," and they would have been perfectly convenient together for trial purposes. In essence, Plaintiff has brought a second claim of alleged wrong-doing, based on the exact same facts as the first case, and presumes that because it is based on a different legal theories, her claims are not precluded.

Plaintiff's arguments to the contrary wholly fail to rebut the argument that her claims are barred. First, she appears to confuse the theory of claim preclusion with its sister theory of issue preclusion, arguing that the constitutional claims were not actually litigated in Reeves I. It is true that the constitutional claims were not litigated. But Plaintiff makes no mention of the wealth of case law that states that arguments that *could* have been litigated also should have been brought in the first instance.

Second, Plaintiff's repeated reference to the Bankruptcy Code has no bearing on any claim preclusion issue (or on any issue currently before the Court). Plaintiff appears to yet again be reformulating her claim of wrong-doing under a new legal theory. The Court will not, however, spend time addressing the issues in detail because any theory based on "debtor" discrimination is found nowhere in the Complaint and bears not at all on the question of claim preclusion.

Third, Plaintiff claims that any findings of the state courts on appeal have no claim preclusive effect on this cause of action. Her argument misses the point. The question raised in Defendants' summary judgment motion is whether Plaintiff could brought her claim in her first federal court action (Reeves I). Again, whatever holdings were made by the Maryland courts have no relevance to the issue of claim preclusion in this case, as it regards Reeves I.

Having found that Plaintiff's claims arise from the same nucleus of operative facts, the Court concludes that her claims are barred. The doctrine of *res judicata* is

meant to prevent the endless re-litigation of a dispute between the same parties. It seeks to give repose to parties from having to repeatedly argue over the same facts and issues. It is telling that in her second action, Plaintiff "incorporated" all facts previously mentioned in Reeves I, going so far as to consolidate all exhibits from the previous action. It appears to the Court that she simply alleges the same wrong but under the guise of a different legal theory. Such an approach cannot withstand scrutiny.[6]

It is clear, therefore, that to the extent Plaintiff has alleged a stand-alone procedural due process claim, and in the event that her claims were found not to be barred by the doctrine of ripeness, judgment would have to be entered in favor of Defendants under the theory of *res judicata.*

### C) *Procedural Due Process*

Plaintiff has alleged that "procedural irregularities" in the application process deprived Plaintiff of her right to Due Process of law. Even if this claim was neither barred by ripeness nor by *res judicata,* the Court holds that Plaintiff has disavowed any independent cause of action for procedural due process in her pleadings. The Court notes that Plaintiff in her opposition states that: "There is no separate cause of action for due process ...." Her lengthy opposition to the summary judgment motion appears to *include* claims of procedural irregularities. To the extent that any arguments of violations of Due Process are included in the takings claims, as the Court has already stated, those claims are either barred by claim preclusion or not ripe under *Williamson County.*

## IV. CONCLUSION

For the reasons herein stated, Plaintiff's cause of action under the Takings clause is not ripe for adjudication. It is also unclear whether Plaintiff's claims may ever ripen, given the fact that she no longer owns the property. Should they ever come ripe, they would clearly be barred by the doctrine of *res judicata* because Plaintiff could have brought her constitutional claims in the previous litigation between the parties. As for any claim of a violation of procedural due process, Plaintiff appears to have disavowed any such claim and, even if she had not, it too is barred by claim preclusion. An Order consistent with this Opinion will follow.

---

6. *See, e.g., Hoffman v. United States,* 1998 U.S. Dist. LEXIS 20985, at *13 (W.D.N.C. 1998), *aff'd,* 187 F.3d 629 (4th Cir.1999)(unpublished decision)("Nor was [plaintiff] entitled to initiate suit after suit based on different statutes.").