**In re TRANSCOLOR CORPORATION, Debtor.**

**Transcolor Corporation, Plaintiff,**

**v.**

**Cerberus Partners, L.P., et al., Defendants.**

**Bankruptcy No. 98–6–5483–JS. Adversary No. 99–5464–JS.**

United States Bankruptcy Court, D. Maryland, at Baltimore.

Jan. 19, 2001.

Irving E. Walker, Miles & Stockbridge, P.C., Baltimore, Maryland, Charles R. Bennett, Jr., Riemer & Braunstein, Boston, Massachusetts, for Gordon Brothers Capital Corporation.

Joseph B. Chazen, M. Evan Meyers, Meyers, Billingsley, Rodbell & Rosenbaum, P.A., Riverdale, Maryland, Alan R. Glickman, Marilyn C. Kunstler, Steven Perlstein, Schulte, Roth & Zabel, LLP, New York City, for Cerberus Partners, L.P. and Madeleine L.L.C.

Dale A. Cooter, Donna S. Mangold, Karen S. Karas, Cooter, Mangold, Tompert & Wayson, P.L.L.C., Washington, D.C., for Transcolor Corporation.

Monique D. Almy, Ober, Kaler, Grimes & Shriver, Baltimore, Maryland, Chapter 7 Trustee.

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT

JAMES F. SCHNEIDER, Bankruptcy Judge.

The defendants, Cerberus Partners, L.P. ("Cerberus"), Madeleine L.L.C. ("Madeleine"), and Gordon Brothers Capital Corporation ("Gordon Brothers") filed the instant motion for summary judgment or, in the alternative, for judgment on the pleadings [P. 13]. This opinion addresses the question, "May a party (in this case, a debtor) that sustained injury or alleged that it sustained injury from the rejection by a debtor in a different bankruptcy case of an unexpired lease or executory contract maintain a cause of action in a State court against the insiders of the other debtor who caused it to file bankruptcy and reject the contract or lease?" For the reasons stated, the answer is "No," thereby requiring the dismissal of the instant complaint upon the defendants' motion.

### FINDINGS OF FACT

Transcolor Corporation, the debtor-plaintiff, had a ten-year lease of nonresidential real property and equipment, and a licensing agreement with Winterland Concessions Company ("Winterland"), a California corporation. One year after the lease was executed, Winterland filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of California and rejected the lease pursuant to the provisions of Section 365 of the Bankruptcy Code, which permits a debtor to reject executory contracts and unexpired leases. The bankruptcy court in the Winterland case approved the rejection of the lease in question, and, finding that the case was filed in good faith, confirmed its Chapter 11 plan by order dated January 7, 1998. Transcolor neither filed an objection to the rejection of the lease, nor a claim for damages resulting therefrom in the Winterland bankruptcy case.

Instead, Transcolor filed the instant lawsuit, upon a cause of action for interference with contractual relations, in the Circuit Court for Prince George's County, Maryland, against the defendants, whom it alleged to be insiders of Winterland. The suit was based on the proposition that the defendants wrongfully caused Winterland to file bankruptcy and to reject its lease with Transcolor. The suit was transferred to the Circuit Court for Anne Arundel County, Maryland, and then removed by the defendants to this Court.

### CONCLUSIONS OF LAW

Parties who counsel or influence a debtor to file bankruptcy, whether or not they are insiders, are not subject to liability in a collateral proceeding brought in a State court for having given such advice, counsel, or persuasion to cause the filing to be made. If the law were otherwise, there would be an endless array of lawsuits against insiders and others alleged to be in control of debtors who filed proper bankruptcy petitions. Those aggrieved by the filing of bankruptcy may move to dismiss the petition in the bankruptcy court in which the petition is pending, or to oppose, in the same forum, actions by the debtor

that the aggrieved party believes to be antithetical to its interests.

 The conclusion that the instant complaint is barred is buttressed by the opinion of the U.S. District Court for the District of Maryland (Smalkin, D.J.), in the case of *Koffman v. Osteoimplant Technology, Inc.*, 182 B.R. 115 (D.Md.1995), in which the court held that state law tort claims for malicious prosecution and abuse of process brought against a creditor for the alleged bad faith filing of an involuntary bankruptcy petition were absolutely barred by reason of Federal preemption. In the course of his well-reasoned opinion, Judge Smalkin stated:

> Because Congress has the constitutional power to preempt state law, U.S. Const. art. VI, as well as the constitutional power to enact laws governing bankruptcies, U.S. Const. art. I, S 8, cl. 4, a number of courts have concluded that, by enacting the Bankruptcy Code, Congress has preempted some state activity on matters affecting bankruptcy. *E.g., In re Demoff,* 90 B.R. 391, 396 (Bankr.N.D.Ind.1988) (citing cases); *In re Schnupp,* 64 B.R. 763, 768 (Bankr. N.D.Ill.1986) (In the bankruptcy context, "where state law frustrates or burdens federal policy that state law must give way"). On the other hand, because the common law of the various states provides much of the legal framework for the operation of the bankruptcy system, it cannot be said that Congress has completely preempted all state regulation which may affect the actions of parties in bankruptcy court. "Where the Bankruptcy Code is silent, and no uniform bankruptcy rule is required, the rights of the parties are governed by the underlying non-bankruptcy law." *Paul v. Monts,* 906 F.2d 1468, 1475 (10th Cir. 1990). Remedies and sanctions for improper behavior and filings in bankruptcy court, however, are matters on which the Bankruptcy Code is far from silent

and on which uniform rules are particularly important.

> \*　　\*　　\*　　\*　　\*　　\*

> In addition to these causes of action, the Bankruptcy Code contains numerous other provisions directed toward regulating the use of the bankruptcy process and the conduct of the parties in bankruptcy court. For example, 11 U.S.C. § 105(a) provides that the court "may issue any order, process, or judgment that is necessary or appropriate ... to prevent an abuse of process." Other remedies include 11 U.S.C. S 727(a)(4)(B), which authorizes a denial of discharge for presenting fraudulent claims, Rule 1008 of the Federal Rules of Bankruptcy Procedure, which requires filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury, and Rule 9011, which authorizes sanctions for signing certain documents not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *See generally Taylor v. Freeland & Kronz,* 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992) (listing remedies).

> \*　　\*　　\*　　\*　　\*　　\*

> Although the Bankruptcy Code includes all the remedies described above, as well as others, these provisions, standing alone, are insufficient to imply congressional intent to preempt all state activity in the area. The mere existence of a detailed and extensive regulatory scheme does not by itself imply an intent to preempt state remedies. *English v. General Elec. Co.,* 496 U.S. 72, 87, 110 S.Ct. 2270, 2279, 110 L.Ed.2d 65 (1990). In addition, courts must consider whether there are "special features" which warrant preemption. *Id.* In this case, such special features exist not because Congress has clearly evidenced its intent to occupy the entire field of bankruptcy remedies, but rather because allowing the common law causes of action

asserted by OTI to go forward would frustrate the congressional purpose in enacting the federal scheme. *See Hines [v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) ].

\* \* \* \* \* \*

Allowing state tort actions based on allegedly bad faith bankruptcy filings or violations of the automatic stay to go forward ultimately would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme. Because such a result threatens to erode the exclusive federal authority in this area, and because it would threaten the uniformity of federal bankruptcy law, the Court finds that OTI's state tort suits are preempted by the federal Bankruptcy Code. *See Gonzales [v. Parks],* [830 F.2d 1033, 1036 (9th Cir.1987) ] ("A congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant.").

\* \* \* \* \* \*

In addition to being inconsistent with exclusive federal jurisdiction, allowing state law tort suits to go forward would prejudice the operation of the Bankruptcy Code in an impermissible manner. Parties could be deterred from exercising their rights in bankruptcy if, by filing a bankruptcy petition, they risk being faced with a state court lawsuit and liability for substantial damages. *Gonzales,* 830 F.2d at 1036. "It is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized." *Id. See also Taylor,* [503 U.S. 638, 643–46, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992) ] (To the extent that existing federal remedies do not deter bad-faith behavior in bankruptcy proceedings, "Congress may enact comparable provisions to address the difficulties") *(emphasis added ).*

Allowing collateral attack on bankruptcy petitions filed in federal court would also threaten the uniformity of federal bankruptcy law provided for in the Constitution. U.S. Const. art. I, S 8, cl. 4. Exclusive federal jurisdiction over bankruptcy proceedings would mean little if standards of conduct in bankruptcy proceedings varied from state to state, and from state to federal court. *See Gene R. Smith Corp. v. Terry's Tractor, Inc.,* 209 Cal.App.3d 951, 954, 257 Cal. Rptr. 598, 600 (1989) ("Different standards defining identical conduct adds an unnecessary and confusing component to the uniform law to be applied in bankruptcy proceedings."), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990). In these circumstances, allowing state law to impose different standards and incentives would impose "an obstacle to the accomplishment and execution of the full objectives of Congress" in enacting the Bankruptcy Code, granting federal courts original and exclusive jurisdiction over core proceedings, and providing for uniform remedies. *See Louisiana Pub. Serv. Comm'n [v. F.C.C.],* [476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) ].

182 B.R. at 123–26.

■ The grounds alleged in the plaintiff's complaint regarding the defendants' alleged misconduct, including their takeover of Winterland and their directing it to file bankruptcy and reject the lease should have been raised, if at all, in the Winterland bankruptcy case. The allegations raise essential bankruptcy issues, namely the debtor's exercise of good faith and the propriety of its rejection of its executory lease. These issues are core matters firmly "within the original and exclusive jurisdiction" of the bankruptcy court. *In re Texaco, Inc.,* 77 B.R. 433, 437 (Bankr. S.D.N.Y.1987). *See also Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1048 (4th Cir.1985),

**154**

*cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *In re Nexus Communications, Inc.,* 55 B.R. 596, 598 (Bankr.E.D.N.C.1985).

* Section 365 provides, as follows:

365. Executory contracts and unexpired leases

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

(2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title;

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement; or

(D) the satisfaction of any penalty rate or provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease.

(3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

(4) Notwithstanding any other provision of this section, if there has been a default in an unexpired lease of the debtor, other than a default of a kind specified in paragraph (2) of this subsection, the trustee may not require a lessor to provide services or supplies incidental to such lease before assumption of such lease unless the lessor is compensated under the terms of such lease for any services and supplies provided under such lease before assumption of such lease.

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; or

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor;

(3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief; or

(4) such lease is of nonresidential real property under which the debtor is the lessee of an aircraft terminal or aircraft gate at an airport at which the debtor is the lessee under one or more additional nonresidential leases of an aircraft terminal or aircraft gate and the trustee, in connection with such assumption or assignment, does not assume all such leases or does not assume and assign all of such leases to the same person, except that the trustee may assume or assign less than all of such leases with the airport operator's written consent.

■ Section 365 * of the Bankruptcy Code provides a comprehensive framework that prescribes detailed instructions for

(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

(2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

(5) Notwithstanding paragraphs (1) and (4) of this subsection, in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is an affected air carrier that is the lessee of an aircraft terminal or aircraft gate before the occurrence of a termination event, then (unless the court orders the trustee to assume such unexpired leases within 5 days after the termination event), at the option of the airport operator, such lease is deemed rejected 5 days after the occurrence of a termination event and the trustee shall immediately surrender possession of the premises to the airport oper-

ator; except that the lease shall not be deemed to be rejected unless the airport operator first waives the right to damages related to the rejection. In the event that the lease is deemed to be rejected under this paragraph, the airport operator shall provide the affected air carrier adequate opportunity after the surrender of the premises to remove the fixtures and equipment installed by the affected air carrier.

(6) For the purpose of paragraph (5) of this subsection and paragraph (f)(1) of this section, the occurrence of a termination event means, with respect to a debtor which is an affected air carrier that is the lessee of an aircraft terminal or aircraft gate—

(A) the entry under section 301 or 302 of this title of an order for relief under chapter 7 of this title;

(B) the conversion of a case under any chapter of this title to a case under chapter 7 of this title; or

(C) the granting of relief from the stay provided under section 362(a) of this title with respect to aircraft, aircraft engines, propellers, appliances, or spare parts, as defined in section 40102(a) of title 49, except for property of the debtor found by the court not to be necessary to an effective reorganization.

(7) Any order entered by the court pursuant to paragraph (4) extending the period within which the trustee of an affected air carrier must assume or reject an unexpired lease of nonresidential real property shall be without prejudice to—

(A) the right of the trustee to seek further extensions within such additional time period granted by the court pursuant to paragraph (4); and

(B) the right of any lessor or any other party in interest to request, at any time, a shortening or termination of the period within which the trustee must assume or reject an unexpired lease of nonresidential real property.

(8) The burden of proof for establishing cause for an extension by an affected air carrier under paragraph (4) or the maintenance of a previously granted extension under paragraph (7)(A) and (B) shall at all times remain with the trustee.

(9) For purposes of determining cause under paragraph (7) with respect to an unexpired lease of nonresidential real property between the debtor that is an affected air carrier and an airport operator under which such debtor is the lessee of an airport terminal or an airport gate, the court shall consider, among other relevant factors, whether substantial harm will result to the airport operator or airline passengers as a result of the extension or the maintenance of a previously granted extension. In making the determination of substantial harm, the court

shall consider, among other relevant factors, the level of actual use of the terminals or gates which are the subject of the lease, the public interest in actual use of such terminals or gates, the existence of competing demands for the use of such terminals or gates, the effect of the court's extension or termination of the period of time to assume or reject the lease on such debtor's ability to successfully reorganize under chapter 11 of this title, and whether the trustee of the affected air carrier is capable of continuing to comply with its obligations under section 365(d)(3) of this title.

(10) The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

(e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

(2) Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(A)(i) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease, whether or not such contract or lease prohibits or re-stricts assignment of rights or delegation of duties; and

(ii) such party does not consent to such assumption or assignment; or

(B) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection; except that the trustee may not assign an unexpired lease of nonresidential real property under which the debtor is an affected air carrier that is the lessee of an aircraft terminal or aircraft gate if there has occurred a termination event.

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

(3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition; or (2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

(A) if before such rejection the case has not been converted under section 1112, 1208, or 1307 of this title, at the time of such rejection; or

(B) if before such rejection the case has been converted under section 1112, 1208, or 1307 of this title—

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

(ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

(h)(1)(A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—

(i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or

(ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

(B) If the lessee retains its rights under subparagraph (A)(ii), the lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease and for the term of any renewal or extension of such lease, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such lease, but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

(C) The rejection of a lease of real property in a shopping center with respect to which the lessee elects to retain its rights under subparagraph (A)(ii) does not affect the enforceability under applicable nonbankruptcy law of any provision in the lease pertaining to radius, location, use, exclusivity, or tenant mix or balance.

(D) In this paragraph, "lessee" includes any successor, assign, or mortgagee permitted under the terms of such lease.

(2)(A) If the trustee rejects a timeshare interest under a timeshare plan under which the debtor is the timeshare interest seller and—

(i) if the rejection amounts to such a breach as would entitle the timeshare interest purchaser to treat the timeshare plan as terminated under its terms, applicable nonbankruptcy law, or any agreement made by timeshare interest purchaser, the timeshare interest purchaser under the timeshare plan may treat the timeshare plan as terminated by such rejection; or

(ii) if the term of such timeshare interest has commenced, then the timeshare interest purchaser may retain its rights in such timeshare interest for the balance of such term and for any term of renewal or extension of such timeshare interest to the extent that such rights are enforceable under applicable nonbankruptcy law.

(B) If the timeshare interest purchaser retains its rights under subparagraph (A), such timeshare interest purchaser may offset against the moneys due for such timeshare interest for the balance of the term after the date of the rejection of such timeshare interest, and the term of any renewal or extension of such timeshare interest, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such timeshare plan, but the timeshare interest purchaser shall not have any right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

(i)(1) If the trustee rejects an executory contract of the debtor for the sale of real property or for the sale of a timeshare interest under a timeshare plan, under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property or timeshare interest.

(2) If such purchaser remains in possession—

(A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and

(B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

(j) A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

(k) Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.

the treatment of executory contracts and unexpired leases in bankruptcy.

 "The issue of whether a contract is executory, and whether it may be assumed or rejected by the debtor, is a matter of bankruptcy law over which the state court has no power to rule." *In re*

(*l*) If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

(m) For purposes of this section 365 and sections 541(b)(2) and 362(b)(10), leases of real property shall include any rental agreement to use real property.

(n)(1) If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect—

(A) to treat such contract as terminated by such rejection if such rejection by the trustee amounts to such a breach as would entitle the licensee to treat such contract as terminated by virtue of its own terms, applicable nonbankruptcy law, or an agreement made by the licensee with another entity; or

(B) to retain its rights (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract) under such contract and under any agreement supplementary to such contract, to such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law), as such rights existed immediately before the case commenced, for—

(i) the duration of such contract; and

(ii) any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law.

(2) If the licensee elects to retain its rights, as described in paragraph (1)(B) of this subsection, under such contract—

(A) the trustee shall allow the licensee to exercise such rights;

(B) the licensee shall make all royalty payments due under such contract for the duration of such contract and for any period described in paragraph (1)(B) of this subsection for which the licensee extends such contract; and

(C) the licensee shall be deemed to waive—

(i) any right of setoff it may have with respect to such contract under this title or applicable nonbankruptcy law; and

*Owen–Johnson,* 115 B.R. 254, 257 (Bankr. S.D.Cal.1990) (A bankruptcy court may abstain from a controversy to allow the state court to determine whether a contract is in existence, but the state court may not proceed to determine remaining bankruptcy issues regarding executoriness and re-

(ii) any claim allowable under section 503(b) of this title arising from the performance of such contract.

(3) If the licensee elects to retain its rights, as described in paragraph (1)(B) of this subsection, then on the written request of the licensee the trustee shall—

(A) to the extent provided in such contract, or any agreement supplementary to such contract, provide to the licensee any intellectual property (including such embodiment) held by the trustee; and

(B) not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment) including any right to obtain such intellectual property (or such embodiment) from another entity.

(4) Unless and until the trustee rejects such contract, on the written request of the licensee the trustee shall—

(A) to the extent provided in such contract or any agreement supplementary to such contract—

(i) perform such contract; or

(ii) provide to the licensee such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law) held by the trustee; and

(B) not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment), including any right to obtain such intellectual property (or such embodiment) from another entity.

(*o*) In a case under chapter 11 of this title, the trustee shall be deemed to have assumed (consistent with the debtor's other obligations under section 507), and shall immediately cure any deficit under, any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution, and any claim for a subsequent breach of the obligations thereunder shall be entitled to priority under section 507. This subsection shall not extend any commitment that would otherwise be terminated by any act of such an agency.

11 U.S.C. § 365 (2000).

jection.). Having stood by while the executory lease was rejected with the approval of the U.S. Bankruptcy Court for the Northern District of California, which made findings of fact regarding the good faith and business judgment of the debtor, the rejected lessor is now precluded from proceeding against other parties for damages in this Court. The plaintiff's right to damages is limited to the damages which it could have rightfully claimed in the California bankruptcy case by reason of the lease rejection. 11 U.S.C. §§ 365(g) and 502(b)(6) (2000). By approving the confirmation of Winterland's Chapter 11 plan, the California Bankruptcy Court necessarily found that Winterland acted in good faith and in compliance with applicable law. 11 U.S.C. § 1129(a) (2000). Furthermore, Winterland's confirmed plan is binding upon the plaintiff. 11 U.S.C. § 1141(a) (2000).

The debtor is attempting an end-run around the bankruptcy court in California by attempting to create a new cause of action in a different case. Considerations of waiver, *res judicata*, and/or collateral estoppel preclude the plaintiff from maintaining the instant litigation. *See, Snell v. Mayor and City Council of Havre de Grace*, 837 F.2d 173 (4th Cir.1988); *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enterprises, Inc.)*, 81 F.3d 1310 (4th Cir. 1996). This is clear because the parties to the instant complaint were also parties to the Winterland bankruptcy proceeding.

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c) (2000); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kubicko v. Ogden Logistics Services*, 181 F.3d 544, 551 (4th Cir.1999). Finding that all material facts alleged in the complaint are undisputed, namely that the defendants were in control of Winterland and that they caused it to file bankruptcy in California and to reject the plaintiff's executory lease, and all inferences therefrom having been taken in a light most favorable to the nonmovant, there has been no cause of action stated for which relief can be granted. Under all these circumstances, there is clear preclusion present in the instant complaint and accordingly the complaint will be dismissed.

ORDER ACCORDINGLY.